Westlaw.

Slip Copy                                                                 Page 1
Slip Copy, 2007 WL 1795959 (N.D.Ohio)
**(Cite as: Slip Copy)**

Vanyo v. CitiFinancial, Inc.
N.D.Ohio,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. Ohio,Eastern Division.
William VANYO, Plaintiff,
v.
CITIFINANCIAL, INC., et al, Defendants.
**No. 1:06CV2943.**

June 20, 2007.

Nicole T. Fiorelli, Patrick J. Perotti, Dworken & Bernstein, Painesville, OH, for Plaintiff.
Dena M. Kobasic, Stacey A. Palmer, Thompson Hine, Cleveland, OH, for Defendants.

*MEMORANDUM AND ORDER*

ANN ALDRICH, United States District Judge.
    *1 This matter is before the court upon plaintiff's motion to remand this action to the Cuyahoga County Court of Common Pleas for want of subject matter jurisdiction (Doc. No. 6), pursuant to 28 U.S.C. § 1447(c). For the following reasons, the motion is granted.

### I. Factual Background

    Plaintiff William Vanyo ("Vanyo") brought this putative class action in the Cuyahoga County Court of Common Pleas against defendants CitiFinancial, Inc., and CitiGroup, Inc. (collectively "Citi"), in October 2006. The complaint alleges that Citi failed to file a timely termination statement for a loan covering consumer goods that Vanyo paid, entitling him to statutory damages of $500 under Ohio Rev.Code § 1309.513. Vanyo brings this action on behalf of himself and the following putative class:

    All persons named as debtors in financing statements in Ohio covering consumer goods, where: (i) Citi ... was the secured party at the date of the pay-off; (ii) on the pay-off date there was no

[remaining] obligation to Citi secured by collateral covered by the financing statement and no [other commitments]; and (iii) Citi did not file a termination statement for the financing statement within 31 days after the pay-off date.

    Vanyo alleges that the putative class is entitled to statutory damages under Ohio Rev.Code § 1309.513 of $500 for each late-filing or non-filing of termination statements where the debtor had paid-off the loan on the secured consumer good or goods. The complaint avers that there are fewer than 10,000 class members and in any event, expressly seeks an aggregate judgment of less than $5,000,000.

    On December 7, 2006, Citi filed a notice of removal, asserting the Class Action Fairness Act of 2005 ("CAFA") as the basis for federal jurisdiction. The matter is now before this court upon plaintiff's motion to remand.

### II. Discussion

    Title 28 U.S.C. § 1447(c) states that "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."The defendant removed this case alleging jurisdiction under CAFA, which provides this court with original jurisdiction over any civil action which is a class action, so long as (1) a member of the class of plaintiffs is diverse from a member of the class of defendants; (2) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; and (3) the number of members in the plaintiff's class is at least 100. 28 U.S.C. § 1332(d)(2) and (5)(D).

    Vanyo does not dispute the diversity of the parties nor that the class of plaintiffs numbers at least 100 members. The issue is whether the amount in controversy is equal to or greater than the $5,000,000 statutory minimum. Vanyo argues that the complaint does not allege an amount in controversy of $5,000,000, and attempts to cap

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 2
Slip Copy, 2007 WL 1795959 (N.D.Ohio)
**(Cite as: Slip Copy)**

damages at $1 less than the threshold for the apparent purpose of avoiding federal jurisdiction.

Citi removed this action by claiming that an amount in controversy greater than the $4,999,999 alleged by the plaintiff likely exists, so that under CAFA, original federal jurisdiction exists for this action. Since the statutory damages for a late-filing or non-filing of a termination statement are $500 per claim under Ohio Rev.Code § 1309.625(E), the number of class members will determine the amount in controversy through the operation of simple multiplication ("class in controversy"). Neither party has provided sufficient evidence for the court to determine how many likely members of the class in controversy exist.

**\*2** The removing defendant has the burden to prove diversity jurisdiction by a preponderance of the evidence. *Hayes v. Equitable Energy Res. Co.,* 266 F.3d 560, 572 (6th Cir.2001) (citation omitted). This court agrees with Judge Gaughan's reasoning that "CAFA does nothing to alter the traditional rule of law that the party opposing remand bears the burden of establishing federal jurisdiction."*Pittman v. Chase Home Finance, LLC,* Case No. 1:05 CV 2470, slip op. at 5 (N.D. OH Feb. 3, 2006) (order denying remand). Some courts have held that CAFA shifts the burden to the party seeking remand to prove lack of jurisdiction, citing Senate Judiciary Committee reports. *Id.* at 4 (surveying district cases). But others have held that while there may have been an intention to liberalize the availability of the federal courts for class actions, the text of CAFA clearly requires that the elements of diversity jurisdiction be proved. *Id.* at 5 (adopting the reasoning of the Seventh Circuit in *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446, 448 (7th Cir.2005), that thirteen Senators could not declare such a rule change). Since the court agrees that CAFA has not shifted the burden from the removing defendant to prove jurisdiction, the court must determine whether Citi has shown by a preponderance of the evidence that the amount in controversy requirement of the statute has been met.

Where a party has provided sufficient evidence

that the size of the class in controversy will support possible damages greater than CAFA's $5,000,000 minimum, federal courts have exercised jurisdiction. In *Pittman,* an Ohio statute authorized statutory damages of $250 if the mortgagee failed to file a satisfaction statement within 90 days of satisfaction. *Id.* at 3. In its notice of removal, the defendant submitted an affidavit averring that it had serviced more than 125,000 residential loans, which had been paid, so that the amount in controversy-that which was at stake if the defendant were found to have filed satisfaction statements late-exceeded the jurisdictional amount ($250 multiplied by 125,000 putative class members).*Id.* at 6. Similarly, in *Romeo v. Home Depot U.S.A., Inc.,* No. 06CV 1505, 2006 U.S. Dist. LEXIS 79881, at \*7 (S.D.Cal. Oct. 30, 2006), the class in controversy included all persons who were given credit card transaction forms that included preprinted spaces specifically designed for filling in any personal identification information of the card holder. An affidavit from the defendant's corporate office stated that the average number of credit card refund transactions (with preprinted spaces for personal telephone numbers) was 60,000 per year; so that if each member of the putative class were to bring his or her claim, the aggregate amount in controversy would be $60 million (i.e., $1000 per violation).*Id.* at \*7. In both of these cases, the defendants met the burden of proving that the amount in controversy was greater than the statutory minimum because they provided evidence that there was a large enough class in controversy that fell within the scope of the state statute authorizing damages.

**\*3** Citi, however, has not provided evidence of a class in controversy that qualifies under Ohio Rev.Code § 1309.625(E) for statutory damages if the late-filings are proved. It has merely provided an affidavit from the Ohio Secretary of State's office, which indicates that there are 22,837 active financing statements on file in which Citi is identified as the secured party. Citi would categorize all active financing statements as putative members of this class action, so the amount of controversy would be $11,418,000 (i.e., 22,837 possible claims for statutory damages of $500 each). But this cat-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1795959 (N.D.Ohio)
**(Cite as: Slip Copy)**

egorization is improper, as it exceeds the scope of Section 1309.625(E), which provides statutory damages for a limited class of claimants-those who (1) have active financing statements with the defendant, (2) covering consumer goods, (3) the loans for which have been paid-off, but for which (4) the defendant did not timely file a termination statement.

The class in controversy includes only those debtors who have active financing statements with Citi covering consumer goods and have paid their loans, so that the matter to be proved at trial is whether the termination statements were timely filed under the Ohio statute. Citi's assertion that there are 22,837 active financing statements is not determinative on the issue of class size, since it only proves the first element of the statute (the number of active financing statements on file naming Citi). It does not prove whether or how many of the 22,837 statements are for consumer goods, or for loans which have actually been paid; a great many of the 22,837 statements may be for non-consumer goods or loans that have not yet been paid. Citi has therefore failed to provide sufficient evidence that the putative class is large enough to support aggregate damages greater than CAFA's statutory minimum to establish subject matter jurisdiction. It is therefore unnecessary for this court to decide whether the plaintiff may limit the amount in controversy in the complaint by refusing to accept damages over a certain dollar amount. Since the court lacks subject matter jurisdiction, the case must be remanded.

### III. Conclusion

For the foregoing reasons, the court grants Vanyo's motion to remand (Doc. No. 6) for lack of subject matter jurisdiction.

IT IS SO ORDERED.

N.D.Ohio,2007.
Vanyo v. CitiFinancial, Inc.
Slip Copy, 2007 WL 1795959 (N.D.Ohio)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2006 WL 2171130 (D.S.C.)
(Cite as: Not Reported in F.Supp.2d)

C
Cook v. Medtronic Sofamor Danek, USA, Inc.
D.S.C.,2006.
Only the Westlaw citation is currently available.
United States District Court,D. South Caro-
lina,Beaufort Division.
Benjamin COOK, Plaintiff,
v.
MEDTRONIC SOFAMOR DANEK, USA, INC.,
Defendant.
**Civil No. 9:06-cv-01995-RBH.**

July 31, 2006.

Lee D. Cope, Peters MurdaughParker Eltzroth and
Detrick, Hampton, SC, for Plaintiff.
Keith D. Munson, Womble Carlyle Sandridge and
Rice, Greenville, SC, for Defendant.

**ORDER GRANTING REMAND**

R. BRYAN HARWELL, District Judge.
*1 This matter is before the court on the
plaintiff's motion to remand this case to the South
Carolina Court of Common Pleas for the Fourteenth
Judicial Circuit, in Hampton County. The Court has
reviewed the motion, memoranda of counsel, and
the record in this case. For the reasons set forth be-
low, the Court finds that remand is appropriate.

*Background Facts and Procedural History*

Plaintiff, Benjamin Cook, a South Carolina cit-
izen, brought this action against the Defendant
Medtronic Sofamor Danek, USA, Inc., a foreign
corporation which does business in South Carolina.
Plaintiff alleges in the complaint that he underwent
spine surgery in 2004 and during such surgery he
received bone tissue that had been improperly har-
vested and which is subject to recall.

The complaint alleges causes of action for neg-
ligence, breach of warranty, strict liability, and vi-
olations of the South Carolina Unfair Trade Prac-
tices Act, S.C.Code Ann. § 39-5-10, et seq. The

prayer for relief, or *ad damnum* clause, requests ac-
tual damages, punitive damages, and treble dam-
ages for the unfair trade practices, "all in an amount
that does not exceed $75,000.00."The defendant re-
moved this case from state court on July 11, 2006
based on diversity jurisdiction. The plaintiff filed
the motion which is currently before the court on
July 14, 2006.

*Standard of Review*

The party seeking to remove a case to federal
court has the burden of establishing federal juris-
diction. *Mulcahey v. Columbia Organic Chem. Co.,
Inc.,* 29 F.3d 148, 151 (4th Cir.1994). Therefore,
the defendant bears the burden in this instance.
"Because removal jurisdiction raises significant
federalism concerns, [the court] must strictly con-
strue removal jurisdiction."*Id.,* citing *Shamrock Oil
& Gas Corp v. Sheets,* 313 U.S. 100 (1941)."If fed-
eral jurisdiction is doubtful, a remand is
necessary."*Mulcahey,* 29 F.3d at 151.

*Discussion*

The defendant removed this case from state
court pursuant to 28 U .S.C. §§ 1441 and 1446. Un-
der § 1441(a), a defendant is permitted to remove a
case to federal court if the court would have had
original jurisdiction over the matter. The defendant
bases federal jurisdiction upon diversity jurisdiction
pursuant to 28 U.S.C. § 1332. Under that statutory
provision, federal district courts have original juris-
diction over a case if the case involves citizens of
different states and the amount in controversy ex-
ceeds $75,000, exclusive of interest and costs.
Without question, diversity of citizenship is present
in this case as the plaintiff is a citizen and resident
of the state of South Carolina and the defendant is a
business entity organized under the laws of the state
of Tennessee with its principal place of business in
the state of Tennessee. Thus, the key issue before
this court is whether the amount in controversy in
the present case exceeds $75,000. The plaintiff

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 2
Not Reported in F.Supp.2d, 2006 WL 2171130 (D.S.C.)
(Cite as: Not Reported in F.Supp.2d)

claims that this court lacks subject matter jurisdiction over the present case because the complaint specifically stipulated that the plaintiff will not seek damages greater than $75,000. On the other hand, the defendant states it "reasonably believes and therefore avers that the amount in controversy exceeds $75,000 exclusive of interests and costs."(Notice of Removal, p. 3-4, Entry # 1).

**\*2** With regard to the amount in controversy requirement, it is well established that the "legal certainty" standard applies when the case is filed by the plaintiff in federal court and the defendant challenges jurisdiction.*St. Paul Mercury Indemnity Co. v. Red Cab,* 303 U.S. 283 (1938). However, there is a divergence of opinions over which standard to apply when the defendant has removed the case from state court. *See De Aguilar v. Boeing Co.,* 47 F.3d 1404, 1409-10 (5th Cir.1995); Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, 14A Federal Practice and Procedure § 3702.

In cases where plaintiff has *not* specified any monetary amount of damages claimed, "courts have required defendants justifying the removal of a case to federal court based on diversity jurisdiction to meet one of at least four different standards to show that the amount in controversy has been satisfied; (1) 'legal certainty,' (2) 'preponderance of the evidence,' (3) 'reasonable probability,' and (4) inverse legal certainty."' *Phillips v. Whirlpool Corp.,* 351 F.Supp.2d 458, 461 (D.S.C.2005).

However, in the case at bar, the plaintiff has specifically pled in the complaint that he is seeking damages "in an amount that does not exceed $75,000.00," which notably falls below the jurisdictional threshold.[FN1]There appears to be a difference of opinion among federal courts in this situation as well. For example, in *Hicks v. Universal Housing, Inc.,* 792 F.Supp. 482, 484 (S.D.W.Va.1992), Judge Faber of our sister court held implicitly that the plaintiff's allegation as to the amount in controversy is irrebuttable, and, consequently, the case may not be removed. However, the Eleventh Circuit Court of Appeals has held that removal may still be had if the "defendant [can]

prove to a legal certainty that the plaintiff's claim *must* exceed [the jurisdictional minimum]."*Burns v. Windsor Insurance Co.,* 31 F .3d 1092, 1095 (11th Cir.1994) (emphasis added). Likewise, in the Fifth Circuit, there is only a requirement that the removing party show by a preponderance of the evidence "that the amount in controversy *actually* exceeds the jurisdictional amount...."*De Aguilar,* 47 F.3d at 1411-12 (emphasis added), *cert. denied,*516 U.S. 865 (1995).

FN1.South Carolina Rule of Civil Procedure 8(a) provides in pertinent part:
Relief for a sum certain in money may be demanded for actual damages, but claims for punitive or exemplary damages shall be in general terms only and not for a stated sum; **provided, however, a party may plead that the total amount in controversy shall not exceed a stated sum which shall limit the claim for all purposes.**
The Reporter's notes to Rule 8 indicate that the prayer or demand for relief is designated as a part of the pleading. The notes further indicate that in 1986 the Rule was amended "because the amount in controversy may determine the jurisdiction of the state and federal courts, as well as the methods of discovery available in state courts."

It appears to this court that the courts which allow inquiry into the amount in controversy even when there is an amount pled in the complaint below the jurisdictional minimum, have noted that "[t]he majority of states now ... have followed the example of Fed.R.Civ.P. 54(c) and do not limit damage awards to the amount specified in the *ad damnum* clause of the state pleading."*Id* . at 1410;*accord Burns,* 31 F.3d at 1094. As such, these courts find that permitting such inquiry is necessary in order to limit "the potential for abusive manipulation by plaintiffs, who may plead for damages below the jurisdictional amount in state court with the knowledge that the claim is actually worth more, but also with the knowledge that they may be able to evade federal jurisdiction by virtue of the pleading."*De Aguilar,* 47 F.3d at 1410;*accord* Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, 14A Federal Practice and Procedure §

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2171130 (D.S.C.)
**(Cite as: Not Reported in F.Supp.2d)**

.FN2

> FN2. Notably, South Carolina has adopted the rationale of Fed.R.Civ.P. 54(c) and does not limit damage awards to the amount specified in the pleadings. *See* Rule 54(c) of the South Carolina Rules of Civil Procedure ("every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."). The South Carolina Court of Appeals held in *Jones v. Bennett,* 348 S.E.2d 365 (S.C.Ct.App.1986), that based upon South Carolina Rules of Civil Procedure 54(c), the prayer for relief in the complaint was not binding where a jury found damages in excess of that amount. However, the court must note that *Jones* was decided on March 24, 1986, which was prior to the aforementioned amendment of Rule 8(a) on May 1, 1986, that added the provision that a party may limit the amount of his claim to not exceed a stated sum "for all purposes." Therefore it appears to this court that there may be some potential conflict between the two rules. At first blush Rule 8(a) would seem to limit the plaintiff to the amount originally pled, however, when juxtaposed with Rule 54(c) language, there appears to be a valid concern for defendants.

*3 Other courts have also noted concern that the removal provision, 28 U.S.C. § 1446(b), was amended in 1988 to impose a one-year limitation on removal of a diversity case after commencement of the action. Judicial Improvements and Access to Justice Act, Pub.L. No. 100-702, § 1016(b)(2)(B), 102 Stat. 4642, 4669-70 (1988). Under the amended removal statute, a plaintiff can plead less than the jurisdictional amount, wait one year, formally amend the complaint to seek more than the jurisdictional amount and remain in state court because the one-year limitation precludes the defendant from removing. *See Kliebert v. Upjohn Co.,* 915 F.2d 142 (5th Circ.1990), *vacated for reh'g en banc,* 923

F.2d 47 (5th Cir.1990), *appeal dism'd per stipulation of settlement,* 947 F.2d 736 (5th Cir.1991).FN3

> FN3. The court notes that in the memorandum in opposition to the motion to remand, the defendant raises both the issue regarding Rule 54(c) of the South Carolina Rules of Civil Procedure and the issue of the plaintiff's potential amendment of the complaint after the one-year limitation for removal has expired.

Notably, the Fourth Circuit Court of Appeals has not addressed which standard to apply in either of the circumstances discussed above. Upon review of all of the above cited authority, this court tends to lean toward the belief that when presented with the issues in the case at bar, a case where the complaint specifically limits recoverable damages to below the jurisdictional minimum, the appropriate procedure would be to conclude that the action was removed improvidently and the court is without jurisdiction since, on the basis of the plaintiff's claims as originally pleaded, the requisite jurisdictional amount was lacking. After all, the Supreme Court held long ago that "[i]f [the plaintiff] does not desire to try his case in federal court he may resort to the expedient of suing for less than the jurisdictional amount and though he would be justly entitled to more, the defendant cannot remove." *St. Paul Mercury,* 303 U.S. at 294.

However, this court also understands the concerns raised by the line of decisions which have found that the inquiry does not necessarily end merely because the plaintiff alleges damages below the threshold amount required for federal jurisdiction. Those opinions have ultimately found that the face of the plaintiff's pleading will not control if made in bad faith. *See De Aguilar,* 47 F.3d at 1410 ("statement from *St. Paul Mercury* [was] plainly premised on the notion that the plaintiff would not be able to recover more in state court than what was alleged in the state court complaint.")

Yet, even if this court were to adopt the *De Aguilar* approach, or the analysis used by the num-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 4
Not Reported in F.Supp.2d, 2006 WL 2171130 (D.S.C.)
(Cite as: Not Reported in F.Supp.2d)

ber of courts following the same line of reasoning, the defendant in this case has failed to show, by any standard, that the plaintiff's limitation on damages was made in bad faith or that the plaintiff would recover a judgment in excess of $75,000 if this case should go to trial and he prevailed. In fact, the only "evidence" proffered by the defendant that the amount in controversy exceeds $75,000 is the mere fact that actual, punitive, and treble damages are requested in the complaint. Obviously, such scant statements are woefully inadequate. The defendant cites Judge Shedd's decision in *Woodward v. New Court Commercial Finance Corp.,* 60 F.Supp.2d 530 (D.S.C.1999), and this court's decision in *Kress v. Alabama Motor Express,* 2005 W.L. 329886 (D.S.C. Dec. 5, 2005), for the proposition that numerous claims for damages can be read to meet the minimum jurisdictional threshold. However, this court finds that the defendant's reliance on those cases is misplaced, as they both involved complaints which sought an *unspecified amount of damages* and did not limit the recoverable damages to an amount below the jurisdictional threshold.

*4 As aforementioned, the *ad damnum* in the complaint in this case specifically limits the plaintiff's prayer for damage "in an amount that does not exceed $75,000.00."Although the defendant attempts to make much of the different types of damages alleged in the complaint, the Supreme Court established long ago that the *ad damnum* or demand for judgment takes precedence over conflicting damage allegations in the body of the complaint. *Iowa Central Railway Co. v. Bacon,* 236 U.S. 305 (1915).

Although the court has found above that the defendant has failed to meet its burden, it should be noted that subsequent to the case being removed to this court, the plaintiff filed a stipulation that the amount in controversy does not exceed $75,000. Specifically, the stipulation states:

The plaintiff in this action against Medtronic Sofamor Danek, by and through his undersigned attorney and agent, hereby irrevocably stipulates that the amount in controversy in this action against Medtronic Sofamor Danek does not exceed

$75,000.00. The plaintiff further stipulates that he will at no time move to amend his complaint to seek an amount against Medtronic Sofamor Danek in excess of $75,000.00.

The plaintiff further agrees that he will not attempt to collect on any judgment rendered against Medtronic Sofamor Danek in excess of $75,000.00 in the event a verdict is rendered exceeding this amount.

(Stipulation of Amount in Controversy, p. 1, Entry # 13).

As noted above, the court has found that the defendant has not shown that the plaintiff's limitation on damages in the complaint was made in bad faith, however, the plaintiff's stipulation further supports this finding.

Finally, this court must note that it not only has concerns regarding abusive manipulation by plaintiffs, but also by defendants who simply desire to be in federal court regardless of the fact that the amount sought by the plaintiffs is less than the jurisdictional minimum. Therefore, the court feels obligated to warn the defendant in the case at bar that there is a line of authority which apparently concludes that if a defendant removes a case, despite the plaintiff's allegations in the complaint that damages are less than the federal jurisdictional amount, and the federal court accepts jurisdiction, the court may be required to grant a new trial if the jury awarded less than the jurisdictional amount, because of the defendant's own averment that the damages actually exceeded the jurisdictional amount. *See Kliebert, supra.*

### Conclusion

For the reasons stated above, this court concludes that this action was removed improvidently and it is without jurisdiction. Therefore, the plaintiff's motion to remand is **GRANTED.**This case is hereby **REMANDED** to the South Carolina Court of Common Pleas for the Fourteenth Judicial Circuit, in Hampton County. A certified copy of this Order of remand shall be mailed by the Clerk

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 5
Not Reported in F.Supp.2d, 2006 WL 2171130 (D.S.C.)
(Cite as: Not Reported in F.Supp.2d)

of this Court to the Clerk of the Court of Common
Pleas, Hampton County, Fourteenth Judicial Circuit
of South Carolina.

   **\*5 IT IS SO ORDERED.**

D.S.C.,2006.
Cook v. Medtronic Sofamor Danek, USA, Inc.
Not Reported in F.Supp.2d, 2006 WL 2171130
(D.S.C.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                    Page 1
Slip Copy, 2006 WL 2077001 (D.S.C.)
**(Cite as: Slip Copy)**

c
Brooks v. GAF Materials Corp.
D.S.C.,2006.
Only the Westlaw citation is currently available.
United States District Court,D. South Caro-
lina,Anderson Division.
Jack BROOKS and Ellen Brooks, Plaintiffs,
v.
GAF MATERIALS CORPORATION, Defendant.
**C.A. No. 8:06-1613-HMH.**

July 24, 2006.

Algernon Gibson Solomons, III, Daniel Alvah
Speights, Marion C. Fairey, Jr., Speights & Run-
yan, Hampton, SC, for Plaintiffs.
Gray Thomas Culbreath, Collins and Lacy,
Columbia, SC, for Defendant.

**OPINION & ORDER**

HENRY M. HERLONG, JR., District Judge.
    *1 This matter is before the court on Jack
Brooks and Ellen Brooks' ("Plaintiffs") motion to
remand. For the reasons set forth below, the court
grants the Plaintiffs' motion.

**I. FACTUAL AND PROCEDURAL BACK-
GROUND**

    The Plaintiffs originally filed suit in the Court
of Common Pleas of Newberry County, South Car-
olina, alleging claims for negligence, negligent rep-
resentation, breach of warranty, breach of implied
warranties, fraud, and a violation of the South Car-
olina Unfair Trade Practices Act ("SCUPTA").
(Com pl.3-10.) The Plaintiffs allege that they
suffered property damage as a result of the Defend-
ant's defective roofing materials. In the prayer for
relief, the Plaintiffs seek general and special com-
pensatory damages, punitive damages, treble dam-
ages, and attorney's fees from the Defendant.
However, the prayer for relief also states that "[i]n
no event is Plaintiffs' recovery, exclusive of interest
and costs, to exceed $74,999.00."(Compl. Prayer

for Relief D.)

    The Defendant removed this action to this court
on May 26, 2006. The Plaintiffs filed a motion to
remand on June 20, 2006, arguing that the case
must be remanded because the amount in contro-
versy does not exceed $75,000, exclusive of interest
and costs, for diversity jurisdiction under 28 U.S.C.
§ 1332. (Pl.s' Mem. Supp. Remand 2.)

**II. LEGAL DISCUSSION**

    Without a basis for federal subject matter juris-
diction, the court must remand the case to state
court. *See*28 U.S.C. § 1447(c) (West Supp.2006)
("If at any time before final judgment it appears
that the district court lacks subject matter jurisdic-
tion, the case shall be remanded.")."The burden of
establishing federal jurisdiction is placed upon the
party seeking removal. Because removal jurisdic-
tion raises significant federalism concerns, we must
strictly construe removal jurisdiction. If federal jur-
isdiction is doubtful, a remand is necessary."*Mulca-
hey v. Columbia Organic Chemicals, Co., Inc.*, 29
F.3d 148, 151 (4th Cir.1994) (internal quotation
marks omitted).

    Section 1332 provides that "[t]he district courts
shall have original jurisdiction of all civil actions
where the matter in controversy exceeds the sum or
value of $75,000, exclusive of interest and costs,
and is between [diverse parties] ...." There is no
dispute that the parties in this case are diverse.
Therefore, the only issue before this court is wheth-
er the amount in controversy exceeds $75,000.
    The Fourth Circuit has not decided the proper
standard in a motion to remand for determining
whether the amount in controversy exceeds
$75,000. In cases in which the plaintiff has not spe-
cified a damage claim, courts have required defend-
ants justifying the removal of a case to federal court
based on diversity jurisdiction to meet one of at
least four different standards to show that the
amount in controversy has been satisfied: (1) "legal
certainty," (2) "preponderance of the evidence," (3)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 2
Slip Copy, 2006 WL 2077001 (D.S.C.)
(Cite as: Slip Copy)

"reasonable probability," and (4) inverse legal certainty ....

*2 *Phillips v. Whirlpool Corp.,* 351 F.Supp.2d 458, 461 (D.S.C.2005) (quoting *Spann v. Style Crest Prods.,* 171 F.Supp.2d 605, 607 (D.S.C.2001)). Other courts within the District of South Carolina have "lean [ed] towards requiring defendants in this position to show either to a 'legal certainty' or at least within 'reasonable probability' that the amount in controversy has been satisfied."*Id.* In *Phillips,* the court further noted that it declined to "adopt any approach under which the court will be required to undertake its own independent review of the amount in controversy despite a specific limitation on damages in the plaintiff's complaint."*Id.; see also Jones v. Allstate Ins. Co.,* 258 F.Supp.2d 424, 427 (D.S.C.2003); *Spann,* 171 F.Supp.2d at 608-09. The court agrees with the holdings in *Phillips, Jones,* and *Spann.*The Plaintiffs' complaint provides that "[i]n no event is Plaintiffs' recovery, exclusive of interest and costs, to exceed $74,999.00."(Compl. Prayer for Relief D.) Furthermore, the Plaintiffs reiterate in their memorandum in support of the motion to remand that the amount in controversy does not meet the jurisdictional minimum. Hence, the court will not undertake an independent review of the amount in controversy as the Plaintiffs' complaint plainly provides a specific limitation on damages.

The Defendant argues that the amount in controversy is met because the Plaintiffs are seeking to recover up to $74,999 in actual damages, and are seeking to add to this amount punitive damages, treble damages, and attorney's fees. The court disagrees. In the prayer for relief, the Plaintiffs plainly state that they are not seeking to recover in excess of $74,999. The Plaintiffs will exclude interest and costs from this amount. As such, the stated amount in controversy in the Plaintiffs' complaint includes actual damages, punitive damages, treble damages, and attorney's fees under South Carolina Code of Laws section 39-5-140(a).

The Defendants further argue that the "Plaintiffs cannot limit the court's ability to treble

damages awarded by a jury" under SCUTPA. (Def.'s Mem. Opp'n Remand 6.); S.C.Code § 39-5-140(a) (1985). Although the court determines whether damages should be trebled under SCUPTA, the Plaintiffs' notice in their prayer for relief "puts the court and [the] defendant[ ] on notice that whatever amount of damages [they] obtain[ ], even if trebled, will not [exceed] $74,999.00."*Phillips,* 351 F.Supp.2d at 462. As the court noted in *Phillips,* the statement in the complaint concerning the amount in controversy, "though not specific, is the relevant information in a motion to remand."*Id.* at 462.The Defendant bears the burden of establishing that the amount in controversy exceeds $75,000. The court finds that the Defendant has not met this "burden to a legal certainty or a reasonable probability."*Id.*[FN1] Accordingly, the court is without subject matter jurisdiction and remands the case to the state court.

> FN1. In addition, the Defendant argues that the Plaintiffs are not bound by their limitation on damages in the complaint. Rule 54(c) of the South Carolina Rules of Civil Procedure provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."Therefore, the Defendant submits that the Plaintiffs could recover more than $75,000. The court recognizes the potential for manipulation. However, the court agrees with the admonition in *Jones* that "a subsequent increase in the amount sought by plaintiffs would not be a good career move for plaintiffs' attorneys considering their anticipated future dealings with this court and would probably be barred by judicial estoppel."258 F.Supp.2d at 427 n. 2. "To further prevent the potential for manipulation after remand, this court strongly suggests that any plaintiff wishing to limit a claim for monetary damages file a pre-removal sworn affidavit of both the plaintiff and counsel disclaiming any monetary recovery in excess of $75,000."*Id.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                Page 3
Slip Copy, 2006 WL 2077001 (D.S.C.)
(Cite as: Slip Copy)

    **\*3** Although not specifically requested by the Plaintiffs, the court declines to award costs and attorney's fees to the Plaintiffs under 28 U.S.C. § 1447(c) because the Defendant had an "objectively reasonable basis for seeking removal."*Martin v. Franklin Capital Corp.,* 126 S.Ct. 704, 711 (U.S.2005).

    It is therefore

    **ORDERED** that the Plaintiffs' motion to remand, docket number 6, is granted. The court instructs the Clerk of Court to remand this case to the Court of Common Pleas of Newberry County, South Carolina. Furthermore, with respect to all claims, the Plaintiffs are barred from recovering a total amount of damages, including actual damages, punitive damages, treble damages, and statutory attorney's fees, exceeding seventy-four thousand nine hundred ninety-nine dollars ($74,999.00), exclusive of interest and costs.

    **IT IS SO ORDERED.**

D.S.C.,2006.
Brooks v. GAF Materials Corp.
Slip Copy, 2006 WL 2077001 (D.S.C.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

175 F.3d 1016                                                                                      Page 1
175 F.3d 1016, 1999 WL 183873 (C.A.4 (W.Va.))
**(Cite as: 175 F.3d 1016, 175 F.3d 1016 (Table))**

C
Rota v. Consolidation Coal Co.
C.A.4 (W.Va.),1999.
NOTICE: THIS IS AN UNPUBLISHED OPIN-
ION.(The Court's decision is referenced in a "Table
of Decisions Without Reported Opinions" appear-
ing in the Federal Reporter. Use FI CTA4 Rule 36
for rules regarding the citation of unpublished opin-
ions.)
      United States Court of Appeals, Fourth Circuit.
      Salvatore E. ROTA; Connie S. Rota, individually
      and on behalf of and as next friend for Chasity R.
      Rota, a minor; Kristi S. Rota, Plaintiffs-Appellants,
                                    v.
CONSOLIDATION COAL COMPANY, a Corpor-
            ation, Defendant-Appellee.
                      No. 98-1807.

                Argued Jan. 25, 1999.
                Decided April 5, 1999.

Appeal from the United States District Court for the
Northern District of West Virginia, at Clarksburg,
No. CA-96-33-1;Frederick P. Stamp, Jr., Chief Dis-
trict Judge.

J. Michael Benninger, Wilson, Frame, Benninger &
Metheny, P.L.L.C., Morgantown, WV, for Appel-
lants.
Robert Mason Steptoe, Jr., Steptoe & Johnson,
Clarksburg, WV, for Appellee.
ON BRIEF: Herbert G. Underwood, Amy M.
Smith, Stephen D. Williams, Steptoe & Johnson,
Clarksburg, WV; Robert M. Vukas, Consol, Inc.,
Pittsburgh, PA, for Appellee.

Before WILKINS, MICHAEL, and TRAXLER, C.J.


                      OPINION

PER CURIAM.
      *1 Salvatore Rota, his wife, and his two de-
pendent children sued Mr. Rota's employer, Con-
solidation Coal Company (Consol) in West Virginia

state court, claiming that Consol deliberately ex-
posed Mr. Rota to a toxic chemical that accelerated
permanent damage to his liver. Consol removed the
case to federal court on the basis of diversity of cit-
izenship and amount in controversy. The district
court denied the Rotas' motion to remand and gran-
ted Consol's motion for summary judgment. We af-
firm.

                         I.

      Rota worked as an underground coal miner for
Consol from 1975 to 1993. In 1988 he was dia-
gnosed with liver disease. In 1990 Rota began
working on a longwall unit where he was required
to handle a hydraulic fluid containing a chemical
called Solcenic 3A. Solcenic 3A contains an agent
called MIBC. Rota remained with the longwall unit
until 1993, when he injured his back. When he saw
a doctor in 1994 to obtain clearance to return to
work, Rota was diagnosed with chronic Hepatitis C.
Following that diagnosis, the Rotas filed suit in
West Virginia state court, claiming that Mr. Rota's
preexisting liver condition had been exacerbated by
his work in Consol's mines. Specifically, they al-
leged that Mr. Rota's exposure to Solcenic 3A
(containing MIBC) caused his liver disease to ad-
vance more quickly than it otherwise would have.
The Rotas sued the company under section 23-4-2
of the West Virginia Code, which allows an em-
ployee to recover from his employer for workplace
injury, if the employer, with "deliberate intention,"
exposed the employee to a "specific unsafe working
condition." The Rotas did not specify the amount of
damages they sought.

      Consol immediately removed the case to feder-
al court, and the Rotas filed a motion to remand, as-
serting that the district court lacked jurisdiction be-
cause Consol had not established that the amount in
controversy would exceed $50,000. The district
court denied the motion to remand. After discovery
the district court granted Consol's motion for sum-
mary judgment on the grounds that the Rotas'

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

175 F.3d 1016
175 F.3d 1016, 1999 WL 183873 (C.A.4 (W.Va.))
(Cite as: 175 F.3d 1016, 175 F.3d 1016 (Table))

Page 2

claims were barred by the statute of limitations and that the Rotas could not establish the essential elements of a claim under section 23-4-2 of the West Virginia Code. The Rotas now appeal the district court's summary judgment order and its denial of their motion to remand.[FN1]

> FN1. The motions of the parties to supplement the record on appeal are granted.

### II.

The Rotas first argue that this case was not properly before the district court because Consol did not show that the Rotas' claims exceeded the $50,000 value required to establish diversity jurisdiction.[FN2] The Rotas, who did not allege a specific damage figure in their complaint, argue that the district court's estimate of their damages as greater than $50,000 was speculative. This estimate was particularly speculative, they add, because any state workers' compensation Mr. Rota received would have reduced the amount recoverable under section 23-4-2. We disagree with the Rotas' analysis.

> FN2. At the time of removal, the amount in controversy had to exceed $50,000 for diversity jurisdiction. Since that time, Congress has increased the amount to $75,000. See 28 U.S.C. § 1332 (1993 & Supp.1998); Federal Courts Improvement Act of 1996, Pub.L. No. 104-317, § 205 (1996).

Mr. Rota's lost wages for the period in question total more than $90,000, according to an unrefuted affidavit submitted by Consol. Mr. Rota responds that he had applied for workers' compensation,[FN3] and a compensation award would have prevented him from recovering on his wage claim in this suit. However, jurisdiction is determined as of the time of removal, see St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 293, 58 S.Ct. 586, 82 L.Ed. 845 (1938) ("[E]vents occurring subsequent to removal which reduce the amount recoverable ... do not oust the district court's [diversity] jurisdiction."), and the district court here was not in a position to forecast the outcome of the workers' compensation claim as of that time.[FN4] Moreover, the

Rotas' complaint alleges other damages including permanent liver injury, medical bills, pain and suffering, the "loss of ability to enjoy life," and loss of companionship and consortium. These assertions of damage, combined with Mr. Rota's lost wage claim, establish the required jurisdictional amount.

> FN3. Mr. Rota's claim for workers' compensation has since been denied.

> FN4. There is some debate among the circuits about the proper standard for assessing the value of an unspecified damage claim. See 14C Charles Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3725, at 89. Some courts have held that the defendant must prove by a preponderance of the evidence that the amount sought in the complaint meets the jurisdictional threshold. See e.g., Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1357 (11th Cir.1996). Others have used "legal certainty," "reasonable probability," and even "inverse legal certainty" standards. See e.g., White v. J.C. Penney Life Ins. Co., 861 F.Supp. 25, 27 (S.D.W.Va.1994) (legal certainty); Thompson v. Fritsch, 966 F.Supp. 543 (D.C.Mich.1997) (reasonable probability); Hale v.Billups of Gonzales, Inc., 610 F.Supp. 162, 163-64 (D.C.La.1985) (inverse legal certainty). This circuit has not addressed the issue. Because our conclusion in this case would be the same under any of these standards, however, we decline to adopt a particular standard here.

### III.

*2 The Rotas next argue that the district court erred in granting summary judgment to Consol on the ground that the Rotas failed to establish all of the elements required to prove liability under West Virginia's "deliberate intention" statute. We also affirm on this issue because the Rotas have not established that MIBC caused Mr. Rota's liver condition to deteriorate. Causation is one of the required ele-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

175 F.3d 1016
175 F.3d 1016, 1999 WL 183873 (C.A.4 (W.Va.))
**(Cite as: 175 F.3d 1016, 175 F.3d 1016 (Table))**

Page 3

ments of section 23-4-2 of the West Virginia Code. And although the Rotas need not show a precise, certain causal link to forestall summary judgment, they still must establish by a "reasonable probability" that Consol's chemicals exacerbated Mr. Rota's preexisting liver injury. *See Hovermale v. Berkeley Springs Moose Lodge No. 1483,* 165 W.Va. 689, 271 S.E.2d 335, 340 (W.Va.1980).

The Rotas have not met their burden under this standard. The Rotas' gastroenterology expert, Dr. Don Seibert, noted that Mr. Rota's cirrhotic deterioration was "well within the norm for [his] disease."And although Dr. Seibert noted the "potential for an environmental cofactor," he also testified that he didn't know "[w]hether it [MIBC] contributed to [Rota's liver disease] in terms of his course."Dr. Seibert also said that he couldn't "say with a relative degree of certainty that [MIBC] is an inciting agent," and that "[w]hether it contributed to [the disease] in terms of its course, [he] prefer [red] not to say no, because [he] d[id]n't know."

Another of the Rotas' experts, Dr. Alan Ducatman, was similarly equivocal. When asked whether he would testify that MIBC accelerated Mr. Rota's liver disease, Ducatman answered "[u]nknown .... you've asked me to give a yes or no answer to something for which I don't know the answer and my answer is I don't know and I don't."Finally, the Rotas' expert toxicologist noted that he was prepared to testify that MIBC was a toxicologic risk factor, but he offered no opinion on causation in Mr. Rota's case.

The Rotas note that one of their experts, Dr. Ducatman, considered MIBC "a risk for the outcome that [Rota] experienced," and that a report issued by the National Institute of Occupational Safety and Health stated that while "MIBC is not known to be a liver or kidney toxin .... workers with impaired liver or kidney function should avoid prolonged exposure" to the chemical. These proffers, however,are not enough to establish that exposure to MIBC caused Mr. Rota's liver condition to deteriorate, even under the "reasonable probability" standard applied on summary judgment.

Because the Rotas failed to establish causation, summary judgment to Consol was appropriate on their deliberate intention claim under section 23-4-2 of the West Virginia Code.[FN5]

> FN5. Because we affirm on the failure to show causation, we need not reach the statute of limitations question.

IV.

The district court's order denying the motion to remand and its judgment entered on the award of summary judgment to Consol are

*AFFIRMED.*

C.A.4 (W.Va.),1999.
Rota v. Consolidation Coal Co.
175 F.3d 1016, 1999 WL 183873 (C.A.4 (W.Va.))

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy
Slip Copy, 2008 WL 183715 (N.D.W.Va.)
**(Cite as: Slip Copy)**

Page 1

McMahon v. Advance Stores Co., Inc.
N.D.W.Va.,2008.
Only the Westlaw citation is currently available.
United States District Court,N.D. West Virginia.
Scott McMAHON and Karen John, individually
and on behalf of all others similarly situated,
Plaintiffs,
v.
ADVANCE STORES COMPANY INCORPOR-
ATED d/b/a Advance Auto Parts and Donn Free,
Defendants.
**Civil Action No. 5:07CV123.**

Jan. 18, 2008.

***MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION TO RE-
MAND***

FREDERICK P. STAMP, JR., District Judge.

I. *Facts and Procedural History*

**\*1** Currently before this Court is a motion to
remand by the plaintiffs, Scott McMahon
("McMahon") and Karen John ("John"). At issue
are (1) whether the notice of removal was timely
filed by the defendants, Advance Store Company,
Inc., d/b/a Advance Auto Parts ("AAP") and Donn
Free ("Free"); and (2) whether this Court has sub-
ject matter jurisdiction pursuant to the Class Action
Fairness Act ("CAFA").

The controversy concerns a warranty on a bat-
tery which McMahon purchased from AAP in
Wheeling, West Virginia, and which he sub-
sequently sold to John. The plaintiffs allege that
within the warranty period, the battery failed. Ac-
cording to the plaintiffs, when John invoked the
warranty and attempted to obtain a refund or re-
placement thereunder, Free, acting as AAP's agent,
refused to honor it because AAP policy was to limit
warranties to original purchasers. John, as a sub-
sequent purchaser, was not eligible to benefit from

the warranty.

On August 30, 2006, McMahon filed a com-
plaint in the Circuit Court of Ohio County, West
Virginia. The original complaint included claims
for breach of express and implied warranties, viola-
tions of West Virginia consumer protection laws,
fraud, and unjust enrichment. After McMahon
amended his complaint to include a class action
claim,[FN1] the defendants removed the action on
September 26, 2007, invoking this Court's jurisdic-
tion under the Class Action Fairness Act, 28 U.S.C.
§ 1332(d) ("CAFA").

> FN1. Although the parties dispute the date
> on which the case became removable, they
> do not dispute that the defendants filed a
> notice of removal after McMahon filed an
> amended complaint adding a class action
> claim.

The plaintiffs [FN2] filed a motion to remand.
According to the plaintiffs, the defendants' removal
was untimely, and this Court lacks subject matter
jurisdiction because the amount in controversy does
not meet CAFA's statutory minimum.[FN3]The
plaintiffs also contend that even if this civil action
does meet the threshold jurisdictional requirements
under CAFA, this Court must decline to exercise
jurisdiction because the case satisfies CAFA's
"local controversy" exception pursuant to 28 U.S.C.
§ 1332(d)(6). The defendants timely responded in
opposition, arguing that removal was timely; that
the jurisdictional requirements are met; and that
CAFA's "local controversy" exception does not ap-
ply to the facts of this case. The plaintiffs filed a
timely reply.

> FN2. After McMahon filed his amended
> complaint but before the defendants re-
> moved the case, Karen John was joined as
> a plaintiff.

> FN3. The plaintiffs are citizens of West
> Virginia. Defendant AAP is a Virginia
> business corporation with its principal

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                     Page 2
Slip Copy, 2008 WL 183715 (N.D.W.Va.)
(Cite as: Slip Copy)

place of business in Roanoke, Virginia. Defendant Free is a citizen of West Virginia.

The plaintiffs' motion to remand has now been fully briefed and is ripe for review. After considering the parties' briefs and the applicable law, this Court finds that the plaintiffs' motion to remand this action must be granted for the reasons stated below.

## II. *Applicable Law*

### A. *Procedural Requirements*

The procedure for removal is governed by 28 U.S.C. § 1446. Section 1446 provides, in relevant part:

(a) A defendant ... desiring to remove any civil action ... from a State court shall file in the district court ... a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process pleadings, and orders served upon such defendant ... in such action.

*2 (b) ... If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may be first ascertained that the case is one which is or has become removable....

28 U.S.C. § 1446(a), (b). In cases where a plaintiff files a motion for leave to file an amended complaint, and the proposed amended complaint enables a defendant to ascertain that the case has become removable, the thirty-day period does not begin until the state judge has assented to the motion.*Hibbs v. Consolidation Coal Co.*, 842 F.Supp. 215, 217 (N.D.W.Va.1994)

### B. *Subject Matter Jurisdiction*

A defendant may remove a case from state court to federal court in instances where the federal court is able to exercise original jurisdiction over the matter. 28 U.S.C. § 1441. The Class Action Fairness Act confers original jurisdiction on district courts over class actions in which any member of a class comprised of at least one hundred plaintiffs is of diverse citizenship from any defendant and in which the amount in controversy exceeds $5,000,000.00, exclusive of interests and costs. 28 U.S.C. § 1332(d). The claims of individual class members may be aggregated to meet the $5,000,000 .00 amount in controversy. 28 U.S.C. § 1332(d)(6).

Generally, the party seeking removal bears the burden of establishing federal jurisdiction. *See Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 151 (4th Cir.1994). However, CAFA greatly expanded federal jurisdiction over class actions, and soon after the statute's enactment in 2005, some courts, relying upon a Senate committee report in CAFA's legislative history, held that the burden of persuasion shifted to the plaintiffs to show a lack of federal jurisdiction. *See, e.g., Dinkel v. General Motors Corp.*, 400 F.Supp.2d 289,295 (D.Me.2005); *Natale v. Pfizer, Inc.*, 379 F.Supp.2d 161,168 (D.Mass.2005), *aff'd on other grounds,*424 F.3d 43 (1st Cir.2005); *Berry v. American Express Pub. Corp.*, 381 F.Supp.2d 1118,1122 (C.D.Cal.2005). Although the United States Court of Appeals for the Fourth Circuit appears not to have ruled on the issue, the five courts of appeals which have considered it have held that CAFA did not shift the burden of persuasion, which remains upon the party seeking removal. *See, e.g., Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir.2006); *Morgan v. Gay*, 471 F.3d 469, 473 (3d Cir.2006); *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328 (11th Cir.2006); *Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir.2006); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir.2005). Furthermore, the United States District Court for the Southern District of West Virginia has also concluded that the burden of establishing federal jurisdiction under CAFA remains on the removing defendant. *Strawn v. AT & T Mobility, Inc.*, 513 F.Supp.2d 599 (S.D.W.Va.2007) (concluding that CAFA did not

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 3
Slip Copy, 2008 WL 183715 (N.D.W.Va.)
**(Cite as: Slip Copy)**

shift burden of establishing federal jurisdiction from removing defendant to party seeking remand; *Adams v. Insurance Co. of North America,* 426 F.Supp.2d 356 (S.D.W.Va.2006) (same) ( *"Adams"*). In *Adams,* the court also observed that this conclusion is consistent with how the Fourth Circuit would likely resolve the question. This Court agrees.

*3 Therefore, in this case, the burden of establishing the $5,000,000.00 jurisdictional threshold amount in controversy rests with the defendants. *See Mulcahey v. Columbia Organic Chems. Co., Inc.,* 29 F.3d 148, 151 (4th Cir.1994). This Court has consistently applied the "preponderance of evidence" standard to determine whether a removing defendant has met its burden of proving the amount in controversy. The well-settled test in the Fourth Circuit for calculating the amount in controversy is " 'the pecuniary result to either party which [a] judgment would produce.' " *Dixon v. Edwards,* 290 F.3d 699, 710 (4th Cir.2002) (quoting *Gov't Employees Ins. Co. v. Lally,* F.2d 568, 569 (4th Cir.1964)). Accordingly, in this case, the defendants must show by a preponderance of the evidence that the pecuniary interest, in the aggregate, of either party is greater than $5,000,000.00.

Even if CAFA's threshold jurisdictional requirements are met, however, remand is required where the case meets certain exceptions. 28 U.S.C. § 1332(d)(4).Title 28, United States Code, Section 1332(d)(4) provides:

(4) A district court must decline to exercise jurisdiction ...

(A)(i) over a class action in which–

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

(II) at least 1 defendant is a defendant

(aa) from whom significant relief is sought by members of the plaintiff class;

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the

action was originally filed; and

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or

(B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

28 U.S.C.A. § 1332(d)(4).

Removal jurisdiction is strictly construed. If federal jurisdiction is doubtful, the federal court must remand. *Mulcahey v. Columbia Organic Chems. Co., Inc.,* 29 F.3d 148, 151 (4th Cir.1994).

### III. *Discussion*

#### A. *Timeliness of Removal*

McMahon's original complaint, filed in state court on August 30, 2006, did not include a class action claim. On July 10, 2007, McMahon filed two motions-one to amend his complaint to add a class action claim, and the other to certify a class. McMahon did not concurrently file a proposed amended complaint with the motion to amend. The defendants filed a response on or about July 31, 2007, opposing McMahon's motions because, the defendants argued, McMahon had entered into a settlement agreement with the defendants and, therefore, McMahon's motions were moot. At a hearing on the motions, held in state court on August 1, 2007, the judge asked McMahon how much time McMahon needed to file the amended complaint and directed McMahon to file "whatever it is [he] want[s] to file."(Hr'g. Tr. 16, 17, Aug. 1, 2007.)

*4 McMahon filed his amended complaint

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 183715 (N.D.W.Va.)
(Cite as: Slip Copy)

Page 4

adding the class action claim and served the defendants on August 7, 2007, which fell within the time period that he had stated he needed for filing the complaint. In accordance with the state court's local rules, McMahon prepared a proposed order memorializing what he contends was the state court's August 1, 2007, on-the-record grant of leave to file an amended complaint. The defendants received the proposed order on or before August 13, 2007, and informed McMahon that they would not approve the proposed order, which, the defendants contend, inaccurately represented what had transpired at the August 1, 2007 hearing. In a letter to McMahon, dated August 13, 2007, the defendants claim that the state court judge did not grant McMahon's motion for leave to file an amended complaint. According to the defendants, the judge merely instructed McMahon to file a proposed amended complaint.

On August 15, 2007, McMahon re-filed his motion to amend accompanied by the same amended complaint that he had filed on August 7, 2007. In a letter dated August 15, 2007, McMahon advised the defendants that he considered the amended complaint to have been filed on August 7, 2007, but that, in an abundance of caution, he was re-filing his motion and amended complaint. McMahon attached copies of the motion and the complaint to his letter. By separate letter, [FN4] McMahon informed the state court judge that the defendants had refused to endorse the proposed order which they had received on or before August 13, 2007. Rather than filing a response to McMahon's motion to amend, the defendants, asserting that McMahon lacked standing to prosecute the class action claim, filed a motion on August 21, 2007 to dismiss the amended complaint.

FN4. McMahon's letter is dated August 15, 2007; it was entered on the state court docket on August 27, 2007.

The state court, on August 27, 2007, entered a written order pertaining to the August 1, 2007 hearing on McMahon's motion to amend. In that order, the state court recorded the following in writing:

"[T]he Court does hereby, ORDER that there is no settlement between the parties to render plaintiff's motion moot and that the plaintiff's motion to amend be and the same is hereby GRANTED."(Mot. to Remand, Ex. 8.) Notably, the state court's order adopted verbatim the language from the McMahon's proposed order prepared on August 7, 2007, which was received, then rejected, by the defendants on or before August 13, 2007.

In their motion to remand, the plaintiffs maintain that the state court's duly recorded oral directive at the August 1, 2007 hearing constitutes leave to file the amended complaint and that the action became removable when McMahon filed the amended complaint on August 7, 2007, or, at the latest, on or before August 13, 2007, when service upon the defendants was effected. Consequently, the plaintiffs conclude, removal was untimely and this case must be remanded.

The plaintiffs' argument rests squarely on the statutory language of § 1446(b). Section § 1446(b) provides that, in cases which become removable after the filing of the initial pleading, the notice of removal is to be filed "within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may be first ascertained that the case is one which is or has become removable."28 U.S.C. § 1446(b). The plaintiffs assert-and the defendants do not dispute-that the defendants were served no later than August 13, 2007 with a copy of the amended complaint, which was filed in state court on August 7, 2007. According to the plaintiffs, the defendants were able by August 13, 2007 to ascertain from the copy of the amended pleading that the case had become removable and were, therefore, required to remove the action by no later than September 12, 2007. Because the defendants did not remove the case until September 26, 2007, the plaintiffs urge, removal was untimely.

*5 The defendants, on the other hand, contend that this action became removable only upon the state court's entry of the written order on August

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 5
Slip Copy, 2008 WL 183715 (N.D.W.Va.)
(Cite as: Slip Copy)

27, 2007, and that the notice of removal is, therefore, timely. In support of their argument, the defendants cite Rule 15(a) of the West Virginia Rules of Civil Procedure, which, under the circumstances of this case, required McMahon to obtain leave of court to amend his complaint. According to the defendants, such leave was not granted until the state court entered the written order. In their pleadings, the defendants do not assert that the state judge failed to grant leave to amend at the hearing. Rather, the defendants claim that, absent a grant of leave by written order, the amended complaint did not become "effective," and that the case was not removable until the amended complaint became "effective." If the case was not removable, so the defendants' argument goes, then the defendants could not have ascertained its removability.

The defendants cite *Harvey v. Harvey,* 298 S.E.2d 467 (W.Va.1982)( *"Harvey* "), for the proposition that absent a written order, a court of record of the State of West Virginia has not spoken. The defendants also rely heavily upon *Savilla v. Speedway SuperAmerica, LLC,* 2004 WL 98815 (4th Cir. Jan. 22, 2004) ("*Savilla* "), to support their claim that an amended complaint becomes effective for purposes of removal only when the state court enters a written order granting leave to amend.

As an initial matter, this Court observes that a court record need not assume the form of a judicial order. Defendants' reliance upon *Harvey* for the contrary proposition is misplaced. In *Harvey,* the West Virginia Supreme Court held that an order or decree entered into the record was necessary to annul or nullify a bigamous marriage. *Harvey* at 473.The court stated: " 'Courts of record must speak by their records. What is not thereby made to appear does not exist in law.'That a court of record speaks only through its *records or orders* has been generally affirmed by this Court in subsequent cases."*Harvey v. Harvey,* 298 S.E.2d 467, 471 (W.Va.1982)(quoting *Meyers v. Washington Heights Land Co.,* 149 S.E. 819, syll. pt. 3 (1929)) (emphasis added). The defendants' interpretation, by relying exclusively on the word "orders," renders the word "records" meaningless. By mis-

construing *Harvey,* the defendants would have this Court find that only a written court order constitutes a court record in West Virginia. However, the West Virginia Supreme Court has clearly recognized that a "court record" is not synonymous with a "court order," the latter being a subset of the former. *See Powers v. Trent,* 40 S.E.2d 837, 839-40 (W.Va.1946)(observing that judicial records include, inter alia, "memorial[ization] of a proceeding or an act of a court of record entered in a roll for its preservation; a memorial or a history of judicial proceedings, in a case, commencing with the writ or the complaint and ending with the judgment[;][t]he original entry of each matter in the course of a suit [;][and] ... records ... associated with the progress of litigated cases" (internal citations omitted)).

**\*6** The other case upon which defendants heavily rely is, *Savilla, supra,* an unpublished opinion by the United States Court of Appeals for the Fourth Circuit.[FN5]In that case, the plaintiff had served the defendants on the same date as she had filed a motion to amend with an accompanying amended complaint. The plaintiff argued that the defendants' removal was premature because the plaintiff was required to re-file the amended complaint and serve the defendants again after the court granted her motion for leave to amend. The United States Court of Appeals for the Fourth Circuit found that removal was not premature.

> FN5. This Court observes that unpublished opinions are not binding precedent in the courts of this circuit. *See* 4th Cir. R. 32.1.

*Savilla* is inapposite to the circumstances of this case. In fact, the *Savilla* decision, insofar as it does apply, supports the plaintiffs' argument for remand. *Savilla* concerned whether the plaintiff in that case was required to take any additional action after the state court granted leave to amend when the plaintiff had already filed the amended complaint at the same time at which she had filed the motion. The court held that no additional action was required after the state court's order granting leave to file the amended complaint, that the order

Slip Copy                                                                                     Page 6
Slip Copy, 2008 WL 183715 (N.D.W.Va.)
(Cite as: Slip Copy)

operated to amend the complaint, and that the defendant's removal based upon the amended complaint filed before the grant of leave was-contrary to the plaintiff's urging-not premature. In other words, the defendants in *Savilla* were permitted to remove the case as of the date the plaintiff filed the amended complaint. They were not required to wait until not the later date when the court granted leave. *Savilla* in no way speaks to the time by which a defendant must file a notice of removal, nor does it suggest that a written court order is the only means by which an amended complaint operates to render a case removable.

Aside from the defendants' misapplication of the case law, this Court observes that absent from the defendants' argument is any reference to the federal removal statute. Importantly, the statutory language clearly contemplates that a state court order does not constitute the sole document by which a defendant may ascertain that a case has become removable. *See* 28 U.S.C. § 1446(6).Section 1446(b) explicitly provides that "a copy of an amended pleading, motion, order or other paper" received by a defendant, through service or otherwise, may serve as the vehicle by which removability becomes ascertainable. *Id.*

This Court has previously recognized that "a written order is not necessarily a paramount consideration in determining whether a case is ripe for removal."*King v. Kayak Mfg. Corp.,* 688 F.Supp. 227, 230 (N.D.W.Va.1988). More recently, this Court observed in *Hibbs v. Consolidation Coal Co.,* 842 F.Supp. 215 (N.D.W.Va.1994), that "it is not the 'written' order which makes the case removable, but the pronouncement by the state judge during a proceeding of record in which he consents to a motion to amend. This avoids speculation about whether the requested relief will be granted."Case law from other courts within the Fourth Circuit similarly recognizes that a defendant may be put on notice that a case has become removable even in the absence of a court order. *See e.g., Allison v. Meadows,* 2005 WL 2016815 (S.D.W.Va., Aug. 22, 2005). Indeed, the Fourth Circuit has determined that, at least in certain circumstances, the motion,

order, or other paper from which it may be ascertained that a case has become removable need not necessarily even be part of the state court record. *See Yarnevic v. Brink's, Inc.,* 102 F.3d 753 (4th Cir.1996).

*7 In the case before this Court, McMahon was granted leave by the state court on August 1, 2007 to file an amended complaint. McMahon both filed the amended complaint adding the class action claim and served the defendants with a copy on August 7, 2007, which the defendants received on or before August 13, 2007. On August 21, 2007-six days before the state court entered its written order-the defendants filed a motion to dismiss the amended complaint based upon McMahon's purported lack of standing to prosecute a class action claim. The defendants were clearly put on notice that a class action claim had been added and that the case had become removable well before the August 27, 2007 entry of the state court's written order. Under these circumstances, the defendants were required to file their notice of removal certainly by no later than September 12, 2007, and, depending upon when the defendants received a copy of the amended complaint, possibly earlier. In any event, this Court finds that because the defendants did not remove the action until September 26, 2007, removal was untimely, and this case must be remanded.

*B. Subject Matter Jurisdiction*

Even if removal were timely, remand would still be required because this Court finds that the defendants have failed to show by a preponderance of evidence that the case meets the jurisdictional minimum under CAFA. Where, as here, the plaintiffs have failed to specify a specific amount of damages in their complaint, a court may consider facts averred in the notice of removal and evidence submitted after the filing of the notice of removal. *See, e.g., Williams v. Best Buy Company, Inc.,* 269 F.3d 1316, 1319 (11th Cir.2001); *Singer v. State Farm Mutual Automobile Ins. Co.,* 116 F.3d 373, 377 (9th Cir.1997); *Allen v. R & H Oil & Gas Co.,*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                           Page 7
Slip Copy, 2008 WL 183715 (N.D.W.Va.)
**(Cite as: Slip Copy)**

63 F.3d 1326, 1335-36 (5th Cir.1995).

Here, the defendants' notice of removal asserts
that this case meets CAFA's amount-in-controversy
requirement and offers the following claims in sup-
port: First, according to the defendants, the putative
class includes "all persons who attempted to obtain
refunds or replacements for warranty-covered
products purchased at AAP, but who were denied a
refund or replacement."(Defs.' Notice of Removal
3.) Second, within the relevant time frame, AAP
stores in West Virginia conducted over 20,000,000
sales transactions. *Id.* Third, assuming that 0.25%
of all transactions during the relevant period consti-
tute "unsuccessful attempts to obtain a refund or re-
placement for a warranty-covered product sold by
AAP[,]" the number of putative class members
reaches approximately 50,000. *Id* . Because the
plaintiffs seek damages under, inter alia, the West
Virginia Consumer Protection Act, which provides
that a plaintiff may recover the greater of actual
damages incurred or $200.00 per violation, the
amount in controversy relating to this claim approx-
imates $10,000,000.00, which represents double the
jurisdictional minimum.[FN6]

> FN6. The defendants calculate this figure
> by multiplying the number of potential
> class plaintiffs, 50,000, by the statutory
> damages provision of $200.00 per viola- tion.

**\*8** Subsequently, as part of their motion in op-
position to the plaintiffs' motion to remand, and in
support of their claims pertaining the amount in
controversy, the defendants filed an affidavit by
Jeffrey W. Fralin, an Inventory and Sales Manager
for AAP, who estimates that during the relevant
period, West Virginia AAP stores conducted ap-
proximately 16,000,000 sales transactions,[FN7] ap-
proximately 2,000,000 of which were "return trans-
actions." (Fralin Aff. 2.) According to Fralin, AAP
assigns codes, including one for "product defect,"
to all return transactions. *Id.* Fralin does not estim-
ate the number of return transactions that were as-
signed the code for product defects, nor does he of-
fer any figures concerning the number of returns at-

tempted but refused on warranty-covered products.

> FN7. This Court observes that Fralin's es-
> timate is substantially lower than the es-
> timate set forth in the defendants' notice of
> removal. The difference, however, is im-
> material to this Court's analysis.

This Court finds the defendants' evidence to be
infirm and concludes that the defendants have
failed to meet their evidentiary burden regarding
the amount in controversy. The inadequacy of the
defendants' evidence results largely from the as-
sumptions and estimates they make concerning
AAP's sales figures and return transactions at their
West Virginia stores. For example, the figure
(0.25%) the defendants assign to calculate the num-
ber of unsuccessful attempts to obtain a refund or
replacement for a warranty-covered product sold by
AAP is nothing more than an assumption-an as-
sumption unsupported by any grounds or rationale
for which it is made. Fralin's affidavit, which con-
tains no figures concerning unsuccessful return at-
tempts on warranty-covered products sold by AAP,
is no more elucidating. Simply put, the defendants
have offered no basis for the percentage they selec-
ted. Furthermore, in part because the defendants
define the putative class to include all persons who
have made unsuccessful attempts to obtain a refund
or replacement for a warranty-covered product, and
in part because the defendants apply their assump-
tion to a percentage of all sales transactions in West
Virginia, rather than simply return transactions
based upon defective warranty-covered products,
the defendants' estimates concerning potential dam-
ages encompass putative claims that fall beyond the
plaintiffs' class complaint.

This Court concludes that the defendants' cal-
culations, based as they are upon unfounded as-
sumptions and ill-defined estimates, cannot be
deemed reliable bases for calculating the amount in
controversy in this case. Consequently, the defend-
ants have not demonstrated by a preponderance of
the evidence that the pecuniary result to either party
which [a] judgment would produce exceeds
$5,000,000.00, exclusive of interests and costs. The

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 183715 (N.D.W.Va.)
**(Cite as: Slip Copy)**

Page 8

amount in controversy has not been satisfied, and
this Court, therefore, lacks subject matter jurisdic-
tion.

### C. *Local Exception Controversy*

Having determined that it lacks subject matter
jurisdiction, this Court need not, and does not, ad-
dress whether the local controversy exception to
CAFA applies.

### IV. *Conclusion*

\*9 For the reasons stated above, this Court con-
cludes that it the defendants' removal was untimely
and that, even if removal was timely, the defend-
ants have failed to carry their burden of showing by
a preponderance of evidence that the jurisdictional
amount in controversy has been met. Therefore, this
Court lacks subject matter jurisdiction over this ac-
tion. Accordingly, the plaintiffs' motion to remand
must be and hereby is GRANTED and it is
ORDERED that this civil action be REMANDED
to the Circuit Court of Ohio County, West Virginia.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of
this memorandum opinion and order to counsel of
record herein and to the Clerk of the Circuit Court
of Ohio County, West Virginia. Pursuant to Federal
Rule of Civil Procedure 58, the Clerk is DIREC-
TED to enter judgment on this matter.

N.D.W.Va.,2008.
McMahon v. Advance Stores Co., Inc.
Slip Copy, 2008 WL 183715 (N.D.W.Va.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                    Page 1
Slip Copy, 2007 WL 2948405 (S.D.Ill.)
(Cite as: Slip Copy)

Hall v. Triad Financial Services, Inc.
S.D.Ill.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. Illinois.
Michael A. HALL, individually and on behalf of all
other people similarly situated, Plaintiff,
v.
TRIAD FINANCIAL SERVICES, INC., Defend-
ant.
No. 07-cv-0184-MJR.

Oct. 10, 2007.

Terrell L. Sharp, Sharp Law Firm P.C., Mount Ver-
non, IL, for Plaintiff.
Craig M. White, Stacey L. Smiricky, Wildman,
Harrold et al., Chicago, IL, Donald L. Smith, Hoag-
land, Fitzgerald et al., Alton, IL, for Defendant.

### *MEMORANDUM AND ORDER*

REAGAN, District Judge.

#### A. *Introduction and Background*

*1 On February 2, 2007, Michael Hall filed a
putative class action suit against Triad Financial
Services in Marion County, Illinois. Hall alleged
that Triad: (1) wrongfully repossessed manufac-
tured homes without notice, (2) wrongfully resold
repossessed manufactured homes without notice,
and (3) wrongfully resold repossessed manufac-
tured homes below their fair market values to
favored dealers in order to drive up the deficiency.
For each violation, Hall requested compensatory
and punitive damages. Hall also requested injunct-
ive relief against Triad.

Triad was served with the complaint on Febru-
ary 12, 2007. On March 14, 2007, Triad timely
filed a notice of removal in this Court claiming that
the jurisdictional requirements of the Class Action
Fairness Act (CAFA) were satisfied.

Hall moved to remand the case to state court on
March 27, 2007 and argued that Triad failed to

meet its burden of proof on the issue of the amount
in controversy. On October 5, 2007, the Court held
a hearing on the motion to remand. For the reasons
stated below, the Court **GRANTS** the motion.

#### B. *Analysis*

*CAFA and the Burden of Proof*

CAFA gives federal district courts original jur-
isdiction over class actions in which: (1) the pro-
posed classes have at least 100 members in the ag-
gregate, (2) the amount in controversy exceeds $5
million, exclusive of interest and costs, and (3)
minimal diversity of citizenship exists between the
parties. 28 U.S.C. § 1332(d)(2); *Hart v. FedEx
Ground Package System, Inc.,* 457 F.3d 675, 677
(7th Cir.2006). Consequently, such cases may be
removed to federal court under 28 U.S.C. § 1441,
which states:
  any civil action brought in a State court of
which the district courts of the United States have
original jurisdiction, may be removed by the de-
fendant or the defendants, to the district court of the
United States for the district and division embra-
cing the place where such action is pending.

The party seeking removal bears the burden of
establishing that all requirements for federal juris-
diction are satisfied. *Brill v. Countrywide Home
Loans, Inc.,* 427 F.3d 446, 448 (7 th Cir.2005). The
proponent of federal jurisdiction must show by a
preponderance of the evidence that the amount in
controversy requirement is met. *Oshana v. Coca-
Cola Co.,* 472 F.3d 506, 511 (7th Cir.2006). Where
the complaint is silent as to the amount of damages
and does not state that the class will seek an amount
below the jurisdictional minimum, the removing
party must provide a "good-faith estimate of the
stakes" that is plausible and supported by a prepon-
derance of the evidence. *Id.;Brill,* 427 F .3d at 449
("part of the removing party's burden is to show not
only what the stakes of the litigation could be, but
also what they are given the plaintiff's actual de-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 2
Slip Copy, 2007 WL 2948405 (S.D.Ill.)
(Cite as: Slip Copy)

mands").“Once the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction.”*Brill,* 427 F.3d at 448 (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283 (1938); *Gardynski-Leschuck v. Ford Motor Co.,* 142 F.3d 955 (7th Cir.1998)).

   **\*2** The amount in controversy is determined by evaluating the plaintiff's complaint “and the record as a whole.”*Schimmer v. Jaguar Cars, Inc.,* 384 F.3d 402, 404 (7th Cir.2004) (citing *Uhl v. Thoroughbred Tech. & Telecommunications, Inc.,* 309 F.3d 97, 983 (7th Cir.2002)). The Court may examine only the evidence which was available when the case was removed, or which sheds light on the situation existing at the moment of removal. *Harmon v. OKI Systems,* 115 F.3d 477, 479-80 (7th Cir.1997).

   In the case at bar, Triad, the removing party, has failed to show by a preponderance of the evidence that the amount in controversy exceeds $5 million.

*Damages Under Counts 1 and 2*

   Hall alleges three classes in his complaint: (A) Illinois residents whose homes have been repossessed without adequate notice within the past ten years, (B) Illinois residents whose repossessed homes have been sold by Triad without adequate notice within the past ten years, and (C) Illinois residents whose repossessed homes have been sold for less than the fair value of the homes within the last ten years. Doc. 2, Exh. 1, ¶ 20.

   Triad first claims that the alleged damages under Counts 1 and 2 are at least $10 million. Triad arrives at the figure with the following calculation. The measure of damages in Counts 1 and 2 is equivalent to the remaining deficiency on the loan after repossession and sale. Hall has a $40,000 deficiency. Triad has repossessed 251 manufactured homes in Illinois over the last ten years, so there are 251 potential members in the three classes. If each had a $40,000 deficiency judgment, then the amount in controversy would be over $10 million.

   This theoretical argument is undermined by Triad's own actual figures, which indicate that the remaining deficiency on all 251 repossessions comes to just over $2.25 million. Doc. 13, Exh. A, ¶¶ 4 & 5. Along with its response (Doc. 13), Triad submitted an affidavit from Ross Eckhardt, Triad's Midwest Executive Vice-President. Eckhardt states: “For the 251 Illinois repossessions by Triad since January 1, 1997, the total loan balances owed at the time of repossession were $6,140,220.79.”Doc. 13, Exh. A, ¶ 4. Eckhardt then informs the Court that “the total received by Triad from sales following repossession was $3,873,712.48.”Doc. 13, Exh. A, ¶ 5. Therefore, the amount of the deficiency for the potential class over ten years is only $2,266,508.31-not $10 million.

   Moreover, this deficiency serves as the potential damages in Counts 1 and 2 only if the applicable statute of limitations is ten years. At the October 5, 2007 hearing, however, it was agreed by all parties that the statute of limitations is four years if the claims are brought under the Uniform Commercial Code. In fact, Triad asserts in its answer that the statute of limitations is four years. Doc. 11, ¶ 5. A four-year limitations period further reduces the potential damages in this case. Unfortunately, Triad does not provide the Court with the number of repossessions during the four-year period, nor does it provide a deficiency amount for this period. As a result, Triad has not met its burden, and the Court is unable to estimate the stakes under Counts 1 and 2, other than to conclude it is significantly less than the $2,266,508.31 deficiency derived from a ten-year period and, most importantly, less than the $5 million jurisdictional threshold.

*Damages Under Count 3*

   **\*3** Triad argues that the potential for punitive damages pushes the amount in controversy over $5 million. Punitive damages may be included in the amount in controversy when applicable state law authorizes the recovery of punitives.*Geschke v. Air Force Ass'n,* 425 F.3d 337, 341 (7 th Cir.2005). When punitives can be counted toward the amount

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                           Page 3
Slip Copy, 2007 WL 2948405 (S.D.Ill.)
(Cite as: Slip Copy)

in controversy, the ratio of punitive to compensatory damages must fall within the permissible range. *See, e.g., Gavin v. AT & T Corp.*, 464 F.3d 634, 641 (7th Cir.2006); *Munro v. Golden Rule Ins. Co.*, 393 F.3d 720, 720-22 (7th Cir.2004).

As punitive damages are generally not awardable under the law of contracts or the Uniform Commercial Code,[FN1] punitive damages could only be awarded for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act alleged in Count 3. While the Court may award punitive damages under the Act, *see* 815 ILCS 505/10A(a), the parties agree that the statute has a limitations period of three years. 815 ILCS 505/10A(e). However, Triad has only provided the Court with information regarding the entire ten-year period. These figures are too broad for the Court to properly assess the potential amount of punitive damages during the applicable limitations period. The Court refuses to engage in wild speculation and is unable find that Triad has established a good faith estimates of either compensatory or punitive damages or attorney fees under Count 3.

> FN1. With respect to punitive damages in contract actions, the Appellate Court of Illinois has noted: "[G]enerally, punitive damages are not available in actions for breach of contract because a party suing for breach of contract is entitled only to the benefit of his bargain and the purpose of awarding damages is to place the injured party in the position he would have been had it not been for the breach. An exception to this rule exists where the breach constitutes an independent tort for which punitive damages are recoverable." *Koehler v. First Nat. Bank of Louisville*, 597 N.E.2d 1261, 1264-65 (Ill.App.1992). With respect to punitive damages under the Uniform Commercial Code, 810 ILCS 5/1-106 states: "The remedies provided by this Act shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed but **neither con-**

**sequential or special nor penal damages may be had** except as specifically provided in this Act or by other rule of law" (emphasis added).

Triad also argues that damages under Count 3 could exceed $10 million if they include the difference between the fair market value of repossessed homes and their actual sale price. Triad's calculation is as follows: Hall's home resold for $11,565, which is 22.3% of the alleged fair market value ($52,000). If all the homes resold in Illinois during the past ten years were sold at only 22.3% of their value, the "fair value" should have been $17,370,905.00 rather than the $3,873,712.48 at which the homes actually sold. The difference between the "fair value" and the actual sale price in that instance would be $13,497,192.52.

However, this highly speculative estimate covers a ten-year period, even though the three-year statute of limitation applies. Triad has told this Court nothing about the relevant figures over the relevant period. Nor has Triad even provided an explanation of changes in the housing market. Because of the speculative nature of the percentage used by Triad and the complete absence of information pertaining to the three-year limitations period, the Court concludes that Triad has not established a good faith estimates of the damages under Count 3.

*Damages Under Count 4*

Hall also requests that Triad be enjoined from the violations alleged in Counts 1, 2, and 3. The measure of equitable damages for purposes of the amount in controversy is governed by the "either viewpoint" rule. The either viewpoint rule assesses the jurisdictional amount attributable to injunctive relief by looking at either the benefit to the plaintiff or the cost to the defendant of the requested relief. *Uhl v. Thoroughbred Tech. & Telecomm., Inc.*, 309 F.3d 978, 983 (7th Cir.2002). In class actions, the Seventh Circuit has determined such amounts "by looking separately at each named plaintiff's claim and the cost to the defendant of complying with an injunction directed to that plaintiff."*Id.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                        Page 4
Slip Copy, 2007 WL 2948405 (S.D.Ill.)
**(Cite as: Slip Copy)**

*4 Triad provides no argument or estimate as to what these damages would be. Therefore, Triad has failed to meet its burden of proof on the possible damages under Count 4.

### C. *Conclusion*

Triad has not provided this Court with any relevant information regarding the class size or potential damages during the applicable limitations periods involved in this case. Triad has failed to satisfy its burden of proof on the amount in controversy requirement of § 1332(d)(2).

Because this Court lacks subject matter jurisdiction, it hereby **GRANTS** Hall's motion (Doc. 4) and **REMANDS** this case to the Circuit Court of Marion County, Illinois. Finally, the Court **DENIES** Hall's request for costs, expenses, and attorney fees, contained in his motion for remand (Doc. 4).

**IT IS SO ORDERED.**

S.D.Ill.,2007.
Hall v. Triad Financial Services, Inc.
Slip Copy, 2007 WL 2948405 (S.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                    Page 1
Slip Copy, 2006 WL 1878984 (D.S.C.)
**(Cite as: Slip Copy)**

**H**
Lanier v. Norfolk Southern Corp.
D.S.C.,2006.
Only the Westlaw citation is currently available.
United States District Court,D. South Caro-
lina,Aiken Division.
Michael B. LANIER, Plaintiff,
v.
NORFOLK SOUTHERN CORPORATION, Nor-
folk Southern Railway Company, Benjamin Aiken,
Mike Ford, and James Thornton, Defendants.
**C/A No. 1:05-3476-MBS.**

July 6, 2006.

Douglas M. Schmidt, New Orleans, LA, for Plaintiff.
Christopher M. Kelly, Daniel Bowman White, Ron-
ald K. Wray, II, W. Howard Boyd, Jr., Gallivan,
White and Boyd, Greenville, SC, Gray Thomas
Culbreath, Collins and Lacy, Monteith Powell
Todd, Sowell, Gray, Stepp and Laffitte, Columbia,
SC, John Arthur Davison, Fulcher, Hagler, Reed,
Hanks and Harper, Augusta, GA, for Defendants.

**OPINION AND ORDER**

MARGARET B. SEYMOUR, District Judge.
    *1 Plaintiff Michael B. Lanier filed this action
in the Court of Common Pleas for the Second Judi-
cial Circuit, South Carolina, on December 9, 2005.
Plaintiff, "individually and as class representative
representing all those who are similarly situated,"
seeks to certify a class of former employees of the
Avondale Mills facilities in Graniteville, South
Carolina. The putative class members allegedly
were laid off or discharged from their employment
subsequent to a train derailment on or near the
Avondale Mills property that resulted in the release
of chlorine gas. According to Plaintiff, the chlorine
gas damaged Avondale Mills' property and equip-
ment and interrupted production capacity, and con-
sequently caused a reduction in employment levels.
Plaintiff contends that Defendants' negligence res-
ulted in the derailment, subsequent release of chlor-

ine gas, eventual disruption of the Avondale Mills
facilities, and consequent reduction in force. De-
fendants Norfolk Southern Corporation (NSC) and
Norfolk Southern Railway Company (NSRC) re-
moved the case on December 13, 2005.

    This matter is before the court on Plaintiff's
motion to remand filed January 11, 2006. NSC and
NSRC filed a memorandum in opposition to
Plaintiff's motion on January 30, 2006. Also before
the court is NSC and NSRC's motion to dismiss
filed January 6, 2006. On January 11, 2006, De-
fendants Aiken, Ford, and Thornton filed a motion
to dismiss based on NSC and NSRC's motion.
Plaintiff filed a memorandum in opposition on
January 31, 2006, to which NSC and NSRC filed a
reply on February 10, 2006.

    The court has reviewed the motions, memor-
anda, and applicable law. The court concludes that
Plaintiff's motion to remand should be denied, and
Defendants' motions to dismiss should be granted.

**A. *MOTION TO REMAND***

    The right to remove a case from state to federal
court derives from 28 U.S.C. § 1441, which
provides in relevant part:
    (a) Except as otherwise expressly provided by
Act of Congress, any civil action brought in a State
court of which the district courts of the United
States have original jurisdiction, may be removed
by the defendant or the defendants, to the district
court of the United States for the district and divi-
sion embracing the place where such action is
pending....
    (b) Any civil action of which the district courts
have original jurisdiction founded on a claim or
right arising under the Constitution, treaties or laws
of the United States shall be removable without re-
gard to the citizenship or residence of the parties.
Any other such action shall be removable only if
none of the parties in interest properly joined and
served as defendants is a citizen of the State in
which such action is brought.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 2
Slip Copy, 2006 WL 1878984 (D.S.C.)
(Cite as: Slip Copy)

NSC and NSRC assert the following grounds for removal: (1) the Class Action Fairness Act, 28 U.S.C. § 1453(b) (CAFA); (2) diversity jurisdiction under 28 U.S.C. § 1332; (3) federal question jurisdiction under 28 U.S.C. § 1331; and federal officer jurisdiction under 28 U.S.C. § 1442(a)(1). In addition, NSC and NSRC contend that the court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because the claims in this case are so related to claims in other cases in which the court has jurisdiction that they comprise part of the same case or controversy. The court previously has ruled invalid NSC and NSRC's grounds for removal under diversity jurisdiction, federal question jurisdiction, federal officer jurisdiction, and supplemental jurisdiction. *See* Order filed May 1, 2006 in Management Case No. 1:06-mn-6000-MB S (Entry 56). The question becomes, then, whether removal is proper under the CAFA.

**\*2** CAFA provides that federal courts have jurisdiction over class actions in which the amount in controversy exceeds $5 million and there is minimal diversity, i.e., at least one plaintiff and one defendant are from different states. *See* 28 U.S.C. § 1332(d0(2). As a general rule, the burden of establishing federal jurisdiction is placed upon the party seeking removal. *Mulcahey v. Columbia Organic Chemicals Co.,* 29 F.3d 148,151 (4th Cir.1994) (citing *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92 (1921)). Because removal jurisdiction raises significant federalism concerns, the court must construe removal jurisdiction strictly. *Id.* (citing *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100 (1941)). If federal jurisdiction is doubtful, a remand is necessary. *Id.* (citing cases).

Plaintiff does not address jurisdiction under CAFA in his motion to remand. NSC and NSRC assert that legislative history demonstrates a Congressional intent that, under CAFA, the burden shifts to Plaintiff to demonstrate that removal is improvident. The court disagrees. The Eleventh, Ninth, and Seventh Circuits have rejected the argument that CAFA's legislative history alters the rule that a proponent of subject matter jurisdiction bears the burden of establishing federal jurisdiction. *See*

*Miedema v. Maytag Corp.,* 2006 WL 1519630 (11th Cir. June 5, 2006); *Abrego Abrego v. Dow Chem. Co.,* 443 F.3d 676 (9th Cir.2006); *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 466 (7th Cir.2005). This is because " 'a committee report cannot serve as an independent statutory source having the force of law.' " *Miedema,* 2006 WL 1519630 \*4 (quoting *United States v. Thigpen,* 4 F.3d 1573, 1577 (11th Cir.1993)).

NSC and NSRC assert that the amount in controversy is satisfied because Plaintiff has indicated that the proposed class consists of at least 350 persons who are seeking damages for loss of income, job benefits, seniority benefits, future earning capacity, loss of enjoyment of life, and mental and emotional injuries. NSC and NSRC point out that it would take only $15,000 per plaintiff to meet the $5 million requirement, less than one year's pay.

Once the proponent of jurisdiction has set out the amount in controversy, only a legal certainty that the judgment will be less forecloses federal jurisdiction. *In re Intel Corp. Microprocessor Antitrust Litig.,* 2006 WL 1431214 (D.Del. May 22, 2006) (citing *Brill,* 427 F.3d at 448-49). The court discerns no foundation in the record to support a finding to a legal certainty that the judgment would be less than $5 million. Accordingly, the court concludes that the amount in controversy exceeds $5 million.

With respect to diversity, it appears that Plaintiff is a citizen of South Carolina; NSC and NSRC are corporations organized and existing pursuant to the laws of the State of Virginia with their principal places of business in Virginia. Therefore, a member of the plaintiff class "is a citizen of a State different from any defendant[.]" 28 U.S.C. § 1332(d)(2)(A). Removal jurisdiction under CAFA is proper. Plaintiff's motion to remand is **denied.**

### B. *MOTION TO DISMISS*

**\*3** Defendants jointly move to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).Rule 12(b)(6) requires that the court accept the allegations in the complaint as

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                           Page 3
Slip Copy, 2006 WL 1878984 (D.S.C.)
(Cite as: Slip Copy)

true, and all reasonable factual inferences must be drawn in favor of the party opposing the motion. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984). Therefore, a motion to dismiss can be granted only if no relief could be obtained under the allegations of fact, if true. *Southmark Prime Plus, L.P. v. Falzone,* 776 F.Supp. 888, 891 (D.Del.1991) (citing *Turbe v. Virgin Islands,* 938 F.2d 427, 428 (3d Cir.1991)). However, the court is not required to adopt conclusory allegations or statements of law. *Id.* at 891.

Defendants contend that Plaintiff fails to state a claim upon which relief can be granted because they owed no legal duty to Plaintiff and the putative class members. The court agrees.

In order to establish a claim for negligence, a plaintiff must prove the following elements: (1) a duty of care owed by the defendant to the plaintiff, (2) a breach of that duty by negligent act or omission, and (3) damage proximately caused by the breach. *Huggins v. Citibank, N.A.,* 585 S.E.2d 275, 276 (S.C.2003) (citing *Doe v. Batson,* 548 S.E.2d 854 (2001)). An essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff. *Id.* In a negligence action, the court must determine, as a matter of law, whether the defendant owed a duty of care to the plaintiff. *Id.* (citing *Faile v. South Carolina Dept. of Juvenile Justice,* 566 S.E.2d 536 (2002)). The concept of duty in tort liability is not to be extended beyond reasonable limits. *South Carolina State Ports Auth. v. Booz-Allen & Hamilton, Inc.,* 346 S.E .2d 324, 326 (S.C.1986). If there is no duty, the defendant is entitled to judgment as a matter of law. *Id.* at 277 (citing *Simmons v. Tuomey Regional Med. Ctr.,* 533 S.E.2d 312 (2000)).

Plaintiff asserts indirect damages from the trail derailment in the form of economic loss. Persons who suffer indirect economic loss from loss of employment as a result of injury to the enterprise where they work usually cannot recover for such economic loss. F. Patrick Hubbard & Robert L. Felix, The South Carolina Law of Torts 49 (3d

ed.2004). This is based on the general rule that "a tort to the person or property of one man does not make the tortfeasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong.... The law does not spread its protection so far."*Robins Dry Dock & Repair Co. v. Flint,* 275 U.S. 303, 309 (1927). To hold otherwise would be to open the courts to a limitless recovery of economic injury. *See Aikens v. Debow,* 541 S.E.2d 576 (W.Va.2000) (finding no duty by truck driver and employer to operator of motel and restaurant who sought damages for loss of income allegedly resulting from bridge closure caused by accident involving truck).

**\*4** The within action is analogous to *Aikens v. Baltimore & Ohio Railroad Co.,* 501 A.2d 277 (Pa.1985). In that case, employees of the Motor Coils Manufacturing Company, Inc. brought an action for lost wages, alleging that the railroad's negligence caused a train derailment that damaged the Motor Coils plant and caused production at the plant to be curtailed. The Pennsylvania Supreme Court, relying on *Robins Dry Dock,* noted that, as a general rule, negligent harm to economic advantage alone is too remote for recovery under a negligence theory. *Aikens,* 501 A.2d at 279. The *Aikens* court observed that employees' right to wages existed by virtue of their relationship with the plant and not the railroad; therefore, the loss of wages was not a probable consequence of the railroad's negligence and the damages claimed were too remote. *Id .* (citing *Willis v. Georgia Northern Railway Co.,* 314 S.E.2d 919 (Ga.1984)). Significantly, the *Aikens* court recognized that allowing "a cause of action for negligent cause of purely economic loss would be to open the door to every person in the economic chain of the negligent person or business to bring a cause of action. Such an outstanding burden is clearly inappropriate and a danger to our economic system."*Id. See also Willis v. Georgia Northern Railway Co.,* 314 S.E.2d 919 (Ga.1984) (negligence of railroad resulted in direct injury only to Swift Independent Packing Company; lost wages sought by employees after collision shut down the plant too remote in nature for recovery).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 4
Slip Copy, 2006 WL 1878984 (D.S.C.)
**(Cite as: Slip Copy)**


    The policy reasons limiting tort liability for in-
direct economic loss compels the conclusion that
Defendants owed no duty to Plaintiff or the putative
class members that would warrant recovery for
wages lost as the result of layoffs and terminations
at the Avondale Mills facilities. Plaintiff therefore
fails to state a claim upon which relief can be gran-
ted. Defendants' motions to dismiss are **granted.**

    **IT IS SO ORDERED.**

D.S.C.,2006.
Lanier v. Norfolk Southern Corp.
Slip Copy, 2006 WL 1878984 (D.S.C.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.3d
Not Reported in F.3d, 2006 WL 1727749 (C.A.7 (Ill.))
(Cite as: Not Reported in F.3d)

Page 1

**H**

The Home Depot, Inc. v. Rickher
C.A.7,2006.
Only the Westlaw citation is currently available.
United States Court of Appeals,Seventh Circuit.
THE HOME DEPOT, INC., Petitioner,
v.
John M. RICKHER, Respondent.
**No. 06-8006.**

May 22, 2006.

Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 05 C 2152. John F. Grady, Judge.

George R. Dougherty, Grippo & Elden, Chicago, IL, Dwight J. Davis, S. Stewart Haskins, II, Catharine B. Wooten, King & Spalding, Atlanta, GA, for Petitioner.
John G. Jacobs, Jonah Orlofsky, Chicago, IL, for Respondent.

Before Hon. RICHARD A. POSNER, Hon. ANN CLAIRE WILLIAMS, and Hon. DIANE S. SYKES, Circuit Judges.

**\*1** The Home Depot requests permission to appeal the district court's order remanding this case to state court pursuant to the Class Action Fairness Act, 28 U.S.C. section 1453(c)(1). CAFA's amendment to section 1332(d)(2) states that district courts "shall have original jurisdiction of any class action in which the matter in controversy exceeds ... $5,000,000" and the parties are from different states. (The parties do not dispute that there is diversity.) Home Depot alleges that the district court erred in determining that the amount in controversy in this case does not exceed $5 million. For the following reasons, we grant the petition for permission to appeal and reverse the district court's order remanding this case to state court. We also grant the petitioner's request for leave to file a reply in support of the petition.

Plaintiff John Rickher alleged that Home Depot violated the Illinois Consumer Fraud Act in association with its sale of damage waivers to tool rental customers in Illinois. Rickher sought to represent a class of persons who rented tools or equipment from Illinois Home Depot stores within three years of the date the complaint was filed. Rickher did not request a specific amount of damages, but alleged that he and the class were injured by paying damage waivers that they would not have paid had the charges not been automatically included in the rental charges. Home Depot filed a notice of removal, stating that the amount in controversy exceeded $5 million. The court asked for more information, which Home Depot provided. Rickher did not dispute any of Home Depot's allegations in support of federal jurisdiction, and even now does not take a position on the matter.

To meet the amount-in-controversy requirement, "the removing litigant must show a reasonable probability that the stakes exceed the minimum."*Brill v. Countrywide Home Loans, Inc.* 427 F.3d 446, 449 (7th Cir.2005); *see Smith v. American Gen. Life & Accident Ins. Co.,* 337 F.3d 888, 892 (7th Cir.2003)."The question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties."*Brill,* 427 F.3d at 448. "Once the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction."*Id.; see St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *Gardynski-Leschuck v. Ford Motor Co.,* 142 F.3d 955 (7th Cir.1998). The amount in controversy includes monetary damages, attorney's fees and "the cost a defendant incurs in complying with injunctive relief."*Tropp v. Western-Southern Life Ins. Co.,* 381 F.3d 591, 595 (7th Cir.2004)

Dan McAreavey, Home Depot's director of tool rental operations and merchandising, filed a declaration discussing the amount in controversy raised by Rickher's complaint. McAreavey stated that the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.3d
Not Reported in F.3d, 2006 WL 1727749 (C.A.7 (Ill.))
**(Cite as: Not Reported in F.3d)**

Page 2

amount of Home Depot's revenue from damage waivers in Illinois from March 2002 to the time of his affidavit totaled $3.82 million. That amount is not disputed by the parties. The district court properly rejected McAreavey's argument that the entire rental contract could be found void, and Home Depot does not challenge that finding in its petition. Home Depot also alleged that it would incur costs if required to modify its rental agreement program and that it would incur attorney's fees, but did not provide any information regarding the amount of these costs.

*2 Primarily at issue is McAreavey's claim that Home Depot could incur damages of up to $1.2 million per year if Rickher successfully prohibits Home Depot from future sales of damage waivers. The district court found that Home Depot had not shown that the entire $1.2 million a year was in controversy because Home Depot did not show that it would be enjoined from selling *all* damage waivers. Home Depot argues that it does not have to show that it is likely that an injunction would prohibit all damage waiver sales, but only that the amount of damages is "in controversy" between the parties. As we stated in *Brill,* the defendant must show "what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks."Here, Rickher claimed that Home Depot's sale of damage waivers is "unconscionable" and that the waivers are "of little if any value." If Rickher were to succeed on his claims, it follows that Home Depot would be enjoined from selling the damage waivers; Home Depot has shown by a reasonable probability that this would cost it $1.2 million per year. Rickher has not disputed this amount. As a result, more than $5 million is "in controversy" between the parties.

Accordingly, we GRANT the petition for permission to appeal and REVERSE the district court's order remanding this case to state court.

C.A.7,2006.
The Home Depot, Inc. v. Rickher
Not Reported in F.3d, 2006 WL 1727749 (C.A.7

(Ill.))

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                              Page 1
Not Reported in F.Supp.2d, 2005 WL 3967998 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

▷
Kearns v. Ford Motor Co.
C.D.Cal.,2005.
Only the Westlaw citation is currently available.
United States District Court,C.D. California.
William KEARNS, Plaintiff,
v.
FORD MOTOR COMPANY, et al. Defendants.
**No. CV 05-5644 GAF(JTLX).**

Nov. 21, 2005.

Christopher M. Burke, Lerach CoughlinStoia Geller
Rudman and Robbins, John H. Gomez, McClelland
and Gomez, Susan G. Taylor, Milberg Weiss Ber-
shad Hynes & Lerach, San Diego, CA, Patrick J.
Coughlin, Patrick J. Coughlin Law Offices, Los
Angeles, CA, for Plaintiff.
Daniel L. Alexander, Molly J. Magnuson, Thomas
M. Riordan, Omelveny & Myers, Los Angeles, CA,
for Defendants.

MEMORANDUM AND ORDER REGARDING
PLAINTIFF'S MOTION TO REMAND

FEESS, J.

I.

INTRODUCTION

**\*1** Plaintiff William Kearns ("Plaintiff," or
"Kearns"), filed a class action lawsuit in the Superi-
or Court of California, Los Angeles, against Ford
Motor Company ("Ford"), Claremont Ford (a local
Ford dealer), and 350 Doe defendants. Ford filed a
timely Notice of Removal with this Court. Ford as-
serts removal jurisdiction based on the Class Action
Fairness Act of 2005 ("CAFA," or "the Act").
Plaintiff has filed a Motion to Remand, arguing that
this suit falls under the so-called "Local Contro-
versy Exception" to CAFA jurisdiction.

The motion raises several issues under this re-
cently enacted statute. First, the Court must determ-

ine who bears the burden of proof on removal. Tra-
ditional removal jurisprudence held that the remov-
ing party bore the burden of establishing the federal
court's jurisdiction over the removed case. Because
CAFA is silent on the burden issue, the Court con-
cludes that Congress must have intended to leave in
effect the traditional rule that the party asserting the
Court's jurisdiction bears the burden of proving that
the exercise of jurisdiction is proper. Thus, the
Court concludes that Ford bears the burden of es-
tablishing that this case was properly removed to
federal court.

Next the Court must determine whether Ford
has met that burden by establishing jurisdiction un-
der CAFA. CAFA was enacted on February 17,
2005, and became effective on February 18, 2005.
The goal of the Act was to expand significantly the
jurisdiction of the federal courts over class action
lawsuits as well as to limit what were seen as typic-
al abuses of the class action system at the state
level.[FN1] In the past, federal jurisdiction rarely ap-
plied to large class action suits because the pres-
ence of class members from all over the country of-
ten destroyed diversity, and the individual class
members' claims were typically well below the
$75,000 threshold for diversity jurisdiction. In or-
der to extend federal jurisdiction to these cases, the
Act provides for jurisdiction based on minimal di-
versity and requires the aggregation of claims in de-
termining whether the threshold amount in contro-
versy (now $5,000,000) has been met. 28 U.S.C. §§
1332(d)(2), (6). The Court concludes that these two
elements are easily met in this case.

> FN1. In particular, Congress put signific-
> ant limits on so-called "coupon settle-
> ments" which produce hardly any tangible
> benefits for the members of the plaintiff
> class, but generate huge fees for the class
> attorneys.

At the same time, however, Congress estab-
lished exceptions where jurisdiction does not apply,
so that "truly local" controversies can continue to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                  Page 2
Not Reported in F.Supp.2d, 2005 WL 3967998 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

be heard in state courts. 28 U.S.C. §§ 1332(d)(3)-(4). The real dispute between the parties focuses on the applicability of these exceptions. In this order the Court reviews those exceptions and concludes that they do not apply because Ford is a "primary defendant" in this case, and because significant relief is not sought from Claremont Ford and the actions of Claremont Ford do not form a significant basis for the relief sought. Indeed, Ford is the defendant whose conduct forms a significant basis for the claims asserted by Plaintiff, and it faces nationwide exposure on theories similar to those alleged in this case. The Court therefore concludes that Plaintiff's class action lawsuit cannot be properly characterized as a "truly local action" under the terms of CAFA.

*2 For these reasons, which are discussed in significantly greater detail below, the motion to remand is DENIED.

II.

STATEMENT OF FACTS

The facts set forth below are found in the pending class action complaint filed by Plaintiff.

*A. FORD'S CERTIFIED PRE-OWNED PROGRAM*

Defendant Ford Motor Company sponsors and markets a "Certified Pre-Owned" ("CPO") program in which Ford dealers select certain late-model pre-owned cars to be put through a rigorous inspection, after which they are marketed and sold to the public with the CPO designation. (Compl.¶¶ 1-2). Ford charges dealers an annual fee of $500-1,500 to participate in the program, and earns roughly $395 for each certified vehicle sold. (*Id.* ¶ 20).

The goal of the program is to increase consumer confidence in the vehicles and thus to boost the cars' market value. (*Id.*). The result is that CPO cars sell at an average of $1,080 premium over comparable uncertified vehicles.(*Id.* ¶ 21).

*B. THE ALLEGED MISREPRESENTATIONS REGARDING THE CPO PROGRAM*

Kearns purchased a CPO vehicle through Defendant Claremont Ford, a local Ford dealer, on May 25, 2003. (*Id.* ¶ 9). He alleges that, contrary to the marketing claims, CPO cars are not treated differently from other pre-owned cars sold by Ford dealers. (*Id.* ¶¶ 4-6). He contends, therefore, that the CPO program artificially inflates the price of vehicles through advertising that misleads consumers about the nature of the program and the condition of CPO vehicles. (*Id.* ¶ 29).

Kearns initiated this class action lawsuit against Ford, Claremont Ford, and 350 Doe Defendants in the Superior Court of the State of California, Los Angeles County, on June 23, 2005 on behalf of himself and a proposed class of plaintiffs including all persons who purchased CPO vehicles from Ford Dealerships within the state of California between June 23, 2001 and the present. (*Id.* ¶ 22). (Ford states that over 79,000 CPO cars were sold in California during the proposed class period. (Not. of Removal ¶ 6).) Plaintiff alleges violations of California Business and Professions Code §§ 17200, *et seq.* and California Civil Code §§ 1750, *et seq.*(*Id.* ¶ 24(b)). He seeks injunctive and compensatory relief including: (1) restoration of amounts paid as a result of the misrepresentation, plus interest; (2) statutory, and punitive or exemplary, damages; and (3) attorneys fees, costs and expenses.(*Id.* Prayer for Relief).

*C. REMOVAL AND THE MOTION TO REMAND*

Ford was served with a copy of the Complaint on July 5, 2005. (Not. of Removal at 1). On August 3, 2005, it timely removed the lawsuit to this Court.(*Id.*). Ford asserts federal jurisdiction under the new diversity jurisdiction provisions of CAFA. (Not. of Removal ¶ 13); 28 U.S.C. § 1332(d) (2005). Though the Notice of Removal was filed in Ford's name only, and Claremont Ford has not joined in the filing, such single-defendant removal is allowed under CAFA's liberal rules of removal. (Not. of Removal ¶ 12); 28 U.S.C. § 1453(b).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 3
Not Reported in F.Supp.2d, 2005 WL 3967998 (C.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

Plaintiff has filed a Motion to Remand, arguing that this suit falls under the so-called "Local Controversy Exception" to CAFA jurisdiction.

### III.

### ANALYSIS

*A. UNDER CAFA, THE BURDEN OF PROOF OF FEDERAL JURISDICTION REMAINS WITH THE DEFENDANT SEEKING REMOVAL*

*1. The Traditional Rule*

\*3 Prior to the passage of CAFA, there was a strong presumption against removal jurisdiction in almost all cases. *Prize Frize, Inc. v. Matrix, Inc.,* 167 F.3d 1261, 1265 (9th Cir.1999). As a result, it was well established that when a defendant sought to remove a case to federal court, the burden was on that defendant to demonstrate that the court had jurisdiction. *Gaus v. Miles,* 980 F.2d 564, 566-67 (9th Cir.1992).

*2. CAFA Expands Removal Jurisdiction in Class Action Cases*

The expansion of federal jurisdiction under CAFA raises the question whether the burden of proof upon removal has been shifted to the party opposing removal. Ford argues that CAFA created a strong presumption in favor of federal jurisdiction over class action cases, and that the burden has therefore shifted to the plaintiffs seeking remand to demonstrate that an exception to federal jurisdiction applies. (Opp. at 4-6). Ford bases its argument on CAFA's legislative history, which, it argues, may be consulted because the statute itself is ambiguous. (*Id.*). Indeed, the Judiciary Committee Report on CAFA states that the Act was intended to create a strong presumption in favor of jurisdiction in class action cases, and that the committee therefore intended to shift the burden to the plaintiff seeking

remand. *See* S.Rep. No. 109-14 at 43 ("the named plaintiff(s) should bear the burden of demonstrating that a case should be remanded").

But a real question exists over whether that legislative history should be consulted in the first place. Plaintiff argues that the statute is not ambiguous, that legislative history therefore should not be consulted, and that the statute, which is silent on the issue, should be construed as leaving the existing burden of proof rule intact. (Rpl. at 3). Because the statute is entirely silent on the question of burden, the Court must address whether such silence amounts to ambiguity. If so, then the Court may resort to legislative history for guidance; if not, then the Court should limit its analysis to the text of the statute. *Garcia v. United States,* 469 U.S. 70, 77, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984) (" 'Resort to legislative history is only justified where the face of the statute is inescapably ambiguous.' ") (citation omitted).

*3. Silence Is Not Ambiguity*

Authority is split on whether CAFA's silence as to burden amounts to an ambiguity which would justify examination of the legislative history. Four decisions, all by district courts from within this circuit, conclude that silence equates to ambiguity and that a court may properly resort to legislative history to construe CAFA's text. *See Berry v. Am. Express Publ'g Co.,* 381 F.Supp.2d 1118, 1121 (C.D.Cal. June 15, 2005); *In re Textainer P'ship Sec. Litig.,* No. C-05-0969 (MMC), 2005 WL 1791559, at \*3 (N.D.Cal. July 27, 2005); *Waitt v. Merck & Co., Inc.,* No. C 05-0759L, 2005 WL 1799740, at \*1-2 (W.D.Wash. July 27, 2005); *Lussier,* 2005 WL 2211094, at \*1.[FN2] Three decisions from other circuits, including the very recent decision of the Court of Appeals for the Seventh Circuit in *Brill,* have determined that the statute is clear on its face, and, therefore, no reference to the legislative history is necessary. *See Brill,* 427 F.3d, at 448 et seq.; *Schwartz,* 2005 WL 1799414, at \*5-7; *Judy,* 2005 WL 2240088, at \*2.

    FN2. Of these four decisions, *Berry* is the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3967998 (C.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

only one which presents much justification for its use of the legislative history. The others largely take it as a given that it is appropriate to do so.

*4 *Berry,* which found ambiguity in the statute, noted that "just as the [answer] to [this question was] not found in the former statutory text, the current amendments do not provide a clear answer."*Berry,* 381 F.Supp.2d at 1121. But while it is true that the original removal statute was silent as to burden of proof and that courts applied statutory interpretation to fill that void, those decisions were made in a different historical context. Since the enactment of the original removal statute, case law has developed a clearly established rule allocating the burden of proof upon removal and upon motion to remand to the removing party. *Gaus,* 980 F.2d at 566-67. In construing legislation enacted in the context of a uniform line of judicial precedent, the Court ordinarily presumes that Congress acted with knowledge of that precedent. *Lorillard v. Pons,* 434 U.S. 575, 581, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) ("[W]here, as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute."). The presumption suggests that Congress, in enacting CAFA, did so with knowledge that the removing party bears the burden of establishing the propriety of the Court's exercise of removal jurisdiction.

Nevertheless, *Berry* rejects the notion that the statute's silence regarding burden was either an accident or an explicit attempt to retain the status quo, concluding instead that it "reflects the Legislature's expectation that the clear statements in the Senate Report would be sufficient."*Berry,*2005 U.S. Dist. LEXIS 15514, at *11. But such reasoning begs the question of whether silence is to be treated as ambiguity and gives committee reports superior weight to the text of statutes themselves. "[W]hen the legislative history stands by itself, as a naked expression of 'intent' unconnected to any enacted text, it has no more force than an opinion poll of the legislators-less, really, as it speaks for fewer."*Brill,*2005

U.S.App. LEXIS 22514, at *4-5.

In the end, the reasoning in *Brill* persuades the Court that CAFA's silence on the burden issue does not equate to ambiguity and that the Court should not resort to legislative history to insert a provision that Congress did not include in CAFA's text.[FN3]

> FN3. If the omission was, in fact, an error, the Court is not empowered to repair it of its own accord. *Schwartz,* 2005 WL 1799414, at *7.

*4. The Removing Party Bears the Burden of Establishing the Court's Jurisdiction*

Because Congress failed to include in CAFA any modification of the well-established burden rule, it must be presumed to have been aware of the existing rule, and the implications of its silence. *Lorillard,* 434 U.S. at 581. That presumption finds support in the legislative record. Noting that the Judiciary Committee fully understood the existing rule on the burden of proof, the Court in *Schwartz* contrasted Congress's adoption of text implementing numerous recommendations regarding the CAFA legislation with its omission of any text changing the burden of proof on removal. *Schwartz,* 2005 WL 1799414, at *6;*id.* at *7 ("I can draw only one conclusion from this omission: by making substantive changes with respect to the aggregation rule, but failing to express a concomitant change in the burden of proof, Congress implicitly acknowledged and adopted the longstanding rule...."). Judge Easterbrook's decision in *Brill* implies a similar view, hinting that the statements in the committee report might represent an attempt by the few to establish a new standard that Congress as a whole rejected. *SeeBrill,*2005 U.S.App. LEXIS 22514, at *5-6 (analogizing to *Pierce v. Underwood,* 487 U.S. 552, 566-68, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)).

*5 For these reasons, the Court concludes that it should not use the Senate Report to engraft a provision in CAFA not present in its text. Indeed, as Judge Easterbrook noted in *Brill,* allocating the burden of proof to the removing party is consistent

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 5
Not Reported in F.Supp.2d, 2005 WL 3967998 (C.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

with the general rule that the party asserting federal jurisdiction in any case bears the burden of establishing such jurisdiction.

That the proponent of jurisdiction bears the risk of non-persuasion is well established. Whichever side chooses federal court must establish jurisdiction; it is not enough to file a pleading and leave it to the court or the adverse party to negate jurisdiction.

427 F.3d at 447 (citations omitted). Moreover, the *Brill* court noted, the practical benefit of such a rule: When the defendant has vital knowledge that the plaintiff may lack, a burden that induces the removing party to come forward with the information-so that the choice between state and federal court may be made accurately-is much to be desired.

Id. at 447-48.

Accordingly, the Court concludes that CAFA did not change the rule regarding the burden of proof on removal. As the removing party, Defendant has the burden of establishing that the federal court has jurisdiction over class action lawsuits removed under CAFA.

*B. BARRING AN EXCEPTION, THE COURT HAS JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT OF 2005 (28 U.S.C. § 1332(d))*

In order to expand the jurisdiction of the federal courts to encompass a large fraction of class action suits, Congress adopted the following default rule in CAFA:

(2) The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which-

(A) any member of a class of plaintiffs is a citizen of a State different from any defendant;....

28 U.S.C. § 1332(d)(2) (2005).[FN4]

FN4. Paragraph 5 of the statute further re-

quires that the class have at least 100 members. 28 U.S.C. § 1332(d)(5). As stated earlier, there are apparently as many as 79,000 possible plaintiffs in the proposed class, so this requirement is not in dispute.

*1. The Amount in Controversy is Over $5,000,000*

As stated above, CAFA established a threshold amount in controversy of $5,000,000 in a class action suit for federal jurisdiction to attach. 28 U.S.C. § 1332(d)(2). At the same time, the Act also changed the way in which the amount in controversy is computed, so that more cases would reach that threshold. 28 U.S.C. § 1332(d)(6).

Under prior law, the claims of each plaintiff against each defendant were considered separately. *Gibson v. Chrysler Corp.,* 261 F.3d 927, 943 (9th Cir.2001). In order to find diversity jurisdiction, there had to be at least one such individual claim that exceeded the $75,000 threshold. *Id.* Multiple claims could be combined only if they were joint or common claims. *Id.* If this rule against aggregation still applied to class action suits, in which the individual claims are often quite small, it would effectively nullify CAFA's attempt to expand jurisdiction.

Therefore, CAFA includes a provision requiring the aggregation of claims in determining jurisdiction over class actions. 28 U.S.C. § 1332(d)(6) ("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."). Here, Plaintiff has alleged that Defendants overcharged members of the proposed class an average of $1,080 per vehicle, and seeks, among other remedies, reimbursement of the overcharges. (Compl. ¶ 18, Prayer for Relief).[FN5] Ford has stated that over 79,000 CPO cars were sold in California during the class period. (Not. of Removal ¶ 6). This makes the potential recovery by class members at least $85,320,000, which is well above the threshold. (*Id.* ¶ 7).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3967998 (C.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

FN5. In considering the question of jurisdiction based on diversity, the "sum claimed by plaintiffs controls if the claim is apparently made in good faith."*St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (U.S.1938). There is some question whether that rule has been superceded by the adoption of 28 U.S.C. § 1367.*Shanaghan v. Cahill,* 58 F.3d 106, 111 (4th Cir.1995). But that issue applies only to supplemental jurisdiction.

*6 However, it is not clear that this calculation of the aggregate claim is the correct one. Careful reading of the aggregation rule exposes an ambiguity: is the aggregation of class member claims which is specified in the statute computed across the entire set of defendants or per individual defendant? That is, must the Court aggregate all the claims against all the defendants, or must it look at the aggregate of claims against Ford separately from the aggregate of claims against Claremont Ford, and so on? This appears to be an issue of first impression. The decisions that have discussed the issue of aggregation under CAFA have all been single-defendant cases. Based on the ambiguity in the statute, it is appropriate to examine the legislative history for guidance.*Garcia,* 469 U.S. at 77. When conducting such an examination, "Committee Reports are 'the authoritative source for finding the Legislature's intent.' " *Berry,* 381 F.Supp.2d at 1121 (quoting *Garcia,* 469 U.S. at 76).

The Committee Report does not address this question directly. However in discussing the aggregation provisions generally, it states:

The Committee intends this subsection to be interpreted expansively.... And if a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case.

S.Rep. No. 109-14. On this basis, it seems clear

that Congress intended aggregation to run across all defendants, in order to capture "all matters in controversy."

*2. Minimal Diversity as Required by 1332(d)(2)(A) Exists*

CAFA rejects the existing rule of complete diversity and, instead, requires only minimal diversity. In particular, diversity jurisdiction is satisfied simply if "any member of a class of plaintiffs is a citizen of a State different from any defendant."28 U.S.C. § 1332(d)(2)(A). In this case, Plaintiff Kearns is a citizen of California. Defendant Ford is a citizen of Delaware and Michigan (but not California). So, minimal diversity of citizenship is established.

Therefore, unless one of the exceptions to jurisdiction enacted as part of CAFA applies, this Court has jurisdiction over the case, and Ford's Notice of Removal was proper.

*C. NONE OF THE STATUTORY EXCEPTIONS TO CAFA JURISDICTION APPLIES*

While Congress was intent on significantly expanding the jurisdiction of the federal courts over class action suits, it conceded that certain "truly local" actions could be reasonably heard in state courts without the risk of undue bias against the defendants, since they too were local. Three exceptions were provided to CAFA jurisdiction to deal with such situations.FN6The three exceptions are distinguished from one another by two factors: (1) the size of the fraction of class members with citizenship in the state in which the action was originally filed ("greater than one-third but less than two thirds," "two-thirds or more," and "greater than two-thirds"); and (2) which defendants are citizens of that state. 28 U.S.C. §§ 1332(d)(2)-(4). The parties make certain assumptions that lead them to rule out the first two exceptions and to argue only the third, which relates to the situation where more than two-thirds of the class members are citizens of the state of filing. However, the Court questions

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 7
Not Reported in F.Supp.2d, 2005 WL 3967998 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

those assumptions since, given some uncertainty as to the citizenship of as-yet unidentified class members, it is possible that any of the three exceptions could apply. Given the Court's responsibility to determine issues of jurisdiction, it has examined all three, and concludes that none applies.

> FN6. There are three additional exceptions to CAFA jurisdiction, but they pertain only to cases involving particular securities, or to cases relating to "the internal affairs and governance of a corporation or other form of business enterprise ... that [arise] under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized."28 U.S.C. § 1332(d)(9). These exceptions do not apply here. They have been addressed in *In re Textainer P'ship Sec. Litig.,* 2005 WL 1791559.

*1. The Exception in 28 U.S.C. § 1332(d)(3) Does Not Apply*

*7 CAFA provides that the Court may decline to exercise jurisdiction over some cases, depending on its evaluation of a number of factors. 28 U.S.C. § 1332(d)(3). Before those factors can be considered, however, the statute requires that these cases be ones in which "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed."*Id.*

In this case, the proposed class is described as "all persons who purchased a vehicle through the CPO program at Claremont Ford and other Ford dealerships located in California from June 23, 2001 through the present."(Compl.¶ 22). Both Plaintiff and Ford take it for granted that this class is made up almost entirely of citizens of California. (Not. of Removal ¶ 8; P & A at 5). For that reason, neither discusses the possibility that this exception might apply. While they may well be (and likely are) correct, the burden is on Ford to establish that this exception does not apply, and it has not met

that burden. Without some evidence provided by Ford (for example, an analysis of the registration records of the 79,000 cars sold through the program), the Court cannot simply assume that one-third of the CPO buyers might not be citizens of other states or countries.FN7This issue may be avoided, however, if the application of the exception can be ruled out based on the other prong. That is, the requirement that the "primary defendants" also be citizens of California.

> FN7. It could be, for instance, that the CPO cars are particularly popular with Mexican citizens, who purchase them from program dealers in Southern California but transport the cars back to their homes in Mexico. Or perhaps the strict emissions standards on California vehicles makes the program popular with green consumers in neighboring states.

The term "primary defendants" has no clear, unambiguous meaning and is not an established term of art. Congress has used the term in only one other statute: the Multiparty, Multiforum, Trial Jurisdiction Act of 2002 ("MMTJA"), where it was also undefined. 28 U.S.C. § 1369. Like CAFA, MMTJA was enacted to expand federal jurisdiction. It gave federal courts jurisdiction over litigation arising from disasters that cause the death of more than 75 persons. *Id.;see alsoPassa v. Derderian,* 308 F.Supp.2d 43 (D.R.I.2004) (concerning the consolidation of claims related to a devastating night club fire in Rhode Island in which pyrotechnics set off by a rock band ignited textured foam and cloth covering the walls, killing 100 people and injuring 200 more). In *Passa,* which is the only decision to consider the interpretation of the term, the court was concerned with an exception to MMTJA jurisdiction for cases in which "the substantial majority of all plaintiffs are citizens of a single State of which the *primary defendants* are also citizens."*Seeid.* at 58;28 U.S.C. § 1369(b)(1) (emphasis added). The court ruled that the exception did not apply because an insufficient number of plaintiffs were Rhode Island citizens. The court nevertheless went on to discuss the term "primary

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 8
Not Reported in F.Supp.2d, 2005 WL 3967998 (C.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

defendants." *Passa,* 308 F.Supp.2d at 61. Finding the term facially ambiguous, and noting little guidance in the legislative history, the court went on to examine the use of "primary defendants" in the case law and determined that the term was widely and freely used with different denotations in different contexts.[FN8]*Id.* at 61-62.

> FN8. For example, in RICO actions, primary defendants are often distinguished from "aiders and abettors." *Id.;see alsoLubin v. Sybedon Corp.,* 688 F.Supp. 1425, 1443 (S.D.Cal.1988). In securities litigation the distinction is between the actual participants in an improper stock transaction and those in a secondary role. *Passa,* 308 F.Supp.2d at 62;*see alsoIn re Equity Funding Corp. of Am. Sec. Litig.,* M.D.L. Docket No. 142, 1976 U.S. Dist. LEXIS 17364 (C.D.Cal. Mar. 26, 1976). In tort law, the term was generally used to distinguish those directly liable to plaintiffs from those vicariously liable or those indemnifying the primary defendants. *Passa,* 308 F.Supp.2d at 62.

*8 The *Passa* court rejected suggestions of the parties that "primary defendants be defined either as those with the deepest pockets or those with the greatest culpability. *Id.* at 61-62.Those definitions were seen as being inappropriate and unworkable because they were too fact-based to be evaluated at the procedural point at which they were to be applied. *Id.* The court concluded that, based on the context, the usage of the term as in tort law was the most appropriate and workable: a "primary defendant" is any with direct liability to the plaintiffs. *Id.* at 62.This Court is inclined to accept that definition, not least because of the similarity in goals of MMTJA and CAFA. Applying the definition to the case at hand, there is nothing in the pleadings to distinguish among the defendants. Claremont Ford (and any Ford dealer currently named as a Doe defendant) is more directly involved in each CPO certification and sale than Ford. (Compl.¶ 4). But Ford was responsible for the program's design and creation, advertises and runs the program, and profits

from each sale. (*Id.* ¶¶ 1, 3, 20). Therefore, Plaintiff's own allegations establish that both Ford and Claremont Ford are potentially directly liable to the plaintiff class. As such, since Ford is not a citizen of California, it cannot be said that all primary defendants are citizens of the state in which the action was filed. Therefore, the Court concludes that this exception does not apply.[FN9]

> FN9. While existing case law was sufficient to define the term, making it unnecessary to refer to legislative history, it happens that such an inquiry would have presented one more alternative definition of "primary defendant." The Committee Report directs that the term include only a defendant "who has substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes."S.Rep. No. 109-14 at 43. This is essentially the same description used to describe defendants fulfilling subclauses (II)(aa) and (II)(bb) of the Local Controversy Exception discussed below. Since Ford meets those criteria (though the local dealers do not), this alternate definition does not disturb the result here.

*2. The "Home State Controversy" Exception (28 U.S.C. § 1332(d)(4)(B)) Does Not Apply*

CAFA dictates that a district court shall decline jurisdiction where "[t]wo-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed."28 U.S.C. § 1332(d)(4)(B). As discussed above, the fraction of the plaintiff class with California citizenship has not been adequately established. However, the Court has already concluded that Ford *is* a primary defendant, and that it *is not* a citizen of California. Therefore, the Home State Controversy exception does not apply.

*3. The "Local Controversy" Exception (28 U.S.C. §*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 9
Not Reported in F.Supp.2d, 2005 WL 3967998 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

*1332(d)(4)(A)) Does Not Apply*

The final exception to CAFA jurisdiction is the most complicated, and the one which, according to Plaintiff, controls the outcome of this motion. It provides as follows:

A district court shall decline to exercise jurisdiction ...

(i) over a class action in which-

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

(II) at least 1 defendant is a defendant-

(aa) from whom significant relief is sought by members of the plaintiff class;

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed; and

*9 (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons

28 U.S.C. § 1332(d)(4)(A). At issue is the applicability of clauses (II) and (III), which are the subject of substantial disagreement between the parties.

Defendant Ford argues that it is the "real" defendant, that Claremont Ford is not a party from whom significant relief is sought, and that no such California party exists. (Opp. at 7-8). In particular, Ford asserts that once all relevant parties are joined (presumably all dealers that participated in the CPO program), the relief sought from Ford will dwarf the relief sought from each individual dealer. Therefore, Ford argues, it is the only party from whom *significant* relief is sought, and, since it is not a citizen of California, clause (II) does not ap-

ply, and removal should be allowed. (*Id.*).

Plaintiff, in contrast, argues that both clauses apply. (Rpl. at 1-2). In particular, in regards to clause (II) Kearns asserts (uncontested) that Claremont Ford is a citizen of California, that significant relief is sought from Claremont Ford and other dealers, and that Claremont Ford's behavior (and that of other California dealers) forms a significant basis for the claims asserted. (*Id.* at 2). This Court disagrees.

a. Claremont Ford Does Not Satisfy Clause (II) Because it is Not a Defendant From Whom "Significant Relief" is Sought or Whose Behavior Forms a "Significant Basis" for the Claims of the Plaintiff Class

In order for clause (II) to be read to include Defendant Claremont Ford, each of the three subclauses, (aa), (bb), and (cc), must be satisfied.

Dealing with the last subclause first, there is no disagreement in regards to subclause (cc), which requires that the defendant in question be a citizen of the state in which the action was originally filed. Claremont Ford is alleged by Plaintiff and acknowledged by Ford to be a corporation established under the laws of California with its principal place of business in California. (Compl. ¶ 11, Not. of Removal ¶ 10). The Court need look no further in regards to subclause (cc).

With regards to subclauses (aa) and (bb), the Court cannot make a determination without an understanding of the terms "significant relief" and "significant basis." Plaintiff argues, without providing any additional evidence, that the subclauses, and hence the individual terms, are clear on their face. (Rpl. at 4). That is not the case.

*i. The Term "Significant Relief" is Ambiguous, and May be Interpreted in Light of Legislative History*

The term "significant relief" is not used in any statute aside from CAFA. It has been used in 36 Supreme Court and Ninth Circuit (appeals and district

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                   Page 10
Not Reported in F.Supp.2d, 2005 WL 3967998 (C.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

court) cases in a generic sense. These uses seem to cluster around two similar, but subtly different, meanings.

*10 One common usage seems closer to the meaning urged on the court by Plaintiff.[FN10]Without great specificity, Kearns argues that significant relief is sought from Claremont Ford because the relief sought is not inconsequential. (Rpl. at 5) ("Plaintiff here seeks *actual* restitution or disgorgement of wrongfully inflated sales prices charged at the time of sale.") (emphasis added).

> FN10."[S]o long as Congress' failure to provide money damages, *or other significant relief,* has not been inadvertent, courts should defer to its judgment."*Kotarski v. Cooper,* 866 F.2d 311, 312 (9th Cir.1989) (emphasis added). A large number of cases either use this quote from *Kotarski,* or use the term in a similar manner as *Kotarski.*

The other common usage seems closer to the interpretation advocated by Ford.[FN11] It argues that the relief sought from Claremont Ford must be viewed relative to the overall relief " 'sought by the class ( [as opposed to] just a subset of the class membership)." ' (Opp. at 7) (emphasis removed) (quoting S.Rep. No. 109-14 at 40) That is to say, Claremont Ford's share of damages would not largely satisfy the claims of the entire class.[FN12]

> FN11.*See, e.g.,Kamm v. Cal. City Dev. Co.,* 509 F.2d 205, 212 (9th Cir.1975) (*"Significant relief had been realized* in the state action through (a) restitution to many members of the class; (b) Western Cities' agreement to establish a program to settle future disputes; (c) a permanent injunction; and (d) a letter of credit in the amount of approximately $5,000,000 to guarantee funds for off-site improvements.... These factors as a whole support the conclusion of the district court that the class action was not a superior method of resolving the controversy.") (emphasis ad-

ded); *Vacco Indus. v. Van Den Berg,* 5 Cal.App.4th 34, 55, 6 Cal.Rptr.2d 602 (Ct.App.1992) ("That the compensatory damages ... were not substantial may only reflect that [the defendants] had not yet been successful in financially injuring the plaintiffs and that the injunctive relief, interposed to prevent such harm, was *the most significant relief which the plaintiffs sought or obtained."*) (emphasis added).

> FN12. Plaintiff attempts to finesse this distinction by stating that "Claremont Ford *and other California Dealers* are California defendants from whom significant class relief is sought....". (Rpl. at 5) (emphasis added). But the statute is clear that for the purposes of this clause there must be a defendant who individually, not as part of a group, satisfies the constraints of the clause. 28 U.S.C. § 1332(d)(4)(A)(i)(II) ("at least *1* defendant is *a* defendant [from whom] ...") (emphasis added).

Based on the ambiguity of this key term, both facially and as used in existing case law, it is appropriate to examine the legislative history for guidance.*Garcia,* 469 U.S. at 77.

### *ii. Claremont Ford is not a Defendant From Whom "Significant Relief" is Sought*

The Committee Report does not provide direct guidance as to the proper interpretation of "significant relief." *See*S.Rep. No. 109-14. However, in discussing the criteria set forth in subclause (aa), the Committee Report provides the following example similar to the one at hand:

[I]n a consumer fraud case alleging that an insurance company incorporated and based in another state misrepresented its policies, a local agent of the company named as a defendant presumably would not fit this criteria. He or she probably would have had contact with only some of the purported class members and thus would not be a person from whom significant relief would be sought by the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 11
Not Reported in F.Supp.2d, 2005 WL 3967998 (C.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

plaintiff class viewed as a whole. Obviously, from a relief standpoint, the real demand of the full class in terms of seeking significant relief would be on the insurance company itself.

*Id.* at 40.[FN13]

> FN13. In support of its argument, Ford cites another example from the Committee Report, that of an automobile manufacturer and several in-state dealers sued for products liability over a defective transmission design. (Opp. at 7). However, the example of the alleged insurance fraud scheme more closely approximates the nature of the misconduct alleged in this case, and is therefore the better analogized example.

This example suggests that the interpretation of "significant relief" urged by Ford is the correct one because relief must be measured with respect to that sought by the entire class. By that measure Claremont Ford, which sold cars to only a fraction of the class, would not satisfy this criterion. Therefore, subclause (aa) cannot be read to apply to Claremont Ford or any other local dealer.

*iii. The Term "Significant Basis" is Ambiguous, and May be Interpreted in Light of Legislative History*

Kearns asserts that dealers have an active involvement in the wrongs done the buyers, including "pick[ing] vehicles for inclusion in the CPO program, conduct [ing] the inspections at issue, and sell[ing] CPO vehicles at a fraudulent 'mark up' price."(Rpl. at 4-5). He argues that this significant involvement in each sale amounts to a significant basis for the claims of the class. (*Id.*).

Ford, in essence, argues that for a party's activities to form a significant basis for the claims, those activities must be at the very heart of the scheme, and (echoing the meaning of "significant relief") relate to the claims of most or all members of the class. (Opp. at 8). Ford asserts that because Clare-

mont Ford did not play "any significant role in the development and implementation of Ford's national CPO program[, its] conduct cannot form a 'significant basis' of the class claims."(*Id.*).

*11 As with "significant relief," the term "significant basis" is new in CAFA. Of the 19 Supreme Court and Ninth Circuit (appeals and district court) decisions that use the term, essentially all use it in the sense of "reason," as in the commonly occurring phrases "a significant basis for the court's decision," and "a significant basis for the assertion of jurisdiction."These uses are not terribly helpful in understanding the sense in which the term is used in the statute. Because the term "significant basis" is ambiguous, an appeal to the legislative history is appropriate. *Garcia,* 469 U.S. at 77.

*iv. Claremont Ford is not a Defendant Whose Conduct Forms a "Significant Basis" of the Claims Asserted*

The insurance scheme example discussed above also sheds light on the meaning of the phrase "significant basis." Specifically, with regard to subclause (bb), the Committee Report goes on to state:

Similarly, the agent presumably would not be a person whose alleged conduct forms a significant basis for the claims asserted. At most, that agent would have been an isolated role player in the alleged scheme implemented by the insurance company.

S.Rep. No. 109-14. at 40. This comports well with Ford's interpretation of "significant basis."

While Kearns is likely correct that the conduct of dealers as a *group* forms a significant basis for the claims, this is not true of any single dealer like Claremont Ford. Its involvement is no different from that of the imagined insurance agent in the Committee Report, who presumably markets the program to clients, accepts and processes their applications, and handles billing. It is Ford, like the insurance company, that promulgates and oversees the overall alleged fraud. As such, if the Committee Report discounts the insurance agents' conduct as

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 12
Not Reported in F.Supp.2d, 2005 WL 3967998 (C.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

not forming a "significant basis" for the claims of the class members, the definition of that term must similarly exclude the conduct of Claremont Ford and other dealers. Therefore, subclause (bb) cannot be read to apply to Claremont Ford or any other local dealers.

On this basis, because neither subclause (aa) nor (bb) applies to Claremont Ford or any other local dealers, the Local Controversy Exception does not apply.

b. Clause (III) Does Not Apply Because the "Principal Injuries" From Alleged or Related Conduct Are Not Limited to California

At this point, having concluded that clause (II) does not apply, the inquiry is technically over. As the clauses are conjunctively joined, whether clause (III) applies is moot, since clause (II) does not. Having come this far, however, the Court will address the parties' arguments and resolve the remaining question for the sake of completeness.

*i. The Term "Principal Injuries" is Ambiguous, and May Be Interpreted in Light of Legislative History*

As with the terms discussed above, "principal injuries" is not used in any statute aside from CAFA. The term has been used in 9 Supreme Court and Ninth Circuit decisions. Taken as a group, they do not seem to suggest any particular interpretation helpful in this context.

**\*12** Ford argues that, since nearly 1.4 million CPO cars were allegedly sold nationwide in 2004, the alleged misconduct would presumably have injured buyers nationwide, not just in California. (Opp. at 9). With so many injured, the injuries suffered only in California cannot be the principal ones. (*Id.*).

Plaintiff asserts that the fact that the CPO program is a national one is not important, because the proposed class is composed only of Californians because they "have only suffered harm here because of conduct made actionable only under Cali-

fornia consumer statutes."(Rpl. at 2 (emphasis removed)). This assertion has no merit. A comparison of the California codes under which Plaintiff seeks relief with consumer protection statutes in other states quickly turns up several large states with apparently equivalent protections, at least as regards the conduct alleged in this case. *See, e.g.,* N.Y. C.L.S. Gen. Bus. § 349 (2005); 73 P.S. § 201-9.2 (2005).

Nevertheless, the Court must still determine the proper interpretation of "principal injuries." Because the term is facially ambiguous and there is no clearly applicable meaning derivable from the case law, it is, again, appropriate to look at the legislative history, particularly the Committee Report, to determine what Congress intended by this phrase. *Garcia,* 469 U.S. at 76-77.

*ii. Principal Injuries From the Alleged Conduct Are Widespread*

In keeping with Congress's asserted goal that the exception be applied narrowly and that jurisdiction apply to all but truly local controversies, the Committee Report states that:

[I]f the defendants engaged in conduct that could be alleged to have injured consumers throughout the country or broadly throughout several states, the case would not qualify for this exception, even if it were brought only as a single-state class action.... In other words, this provision looks at where the principal injuries were suffered by everyone who was affected by the alleged conduct-not just where the proposed class members were injured.

S.Rep. No. 109-14 at 40-41. This directs the Court to the interpretation suggested by Ford.

Thus, the Court concludes that the principal injuries alleged in this suit are not limited to California, as asserted by Plaintiff. Rather, because the CPO program is marketed nationwide, any injuries would have been suffered by consumers throughout the country. Therefore, clause (III), and thus the Local Controversy Exception, do not apply to the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 13
Not Reported in F.Supp.2d, 2005 WL 3967998 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

current case.

### IV.

### CONCLUSION

Having examined the statutes and the case law, the Court concludes that although CAFA did not change the presumption that the removing defendant carries the burden of proving jurisdiction upon a motion to remand, Ford has demonstrated that the case meets the diversity and amount-in-controversy requirements of CAFA jurisdiction and that none of the exceptions to CAFA jurisdiction applies. Therefore, the case was properly removed to this Court, and the Motion to Remand is DENIED.

**\*13** IT IS SO ORDERED.

C.D.Cal.,2005.
Kearns v. Ford Motor Co.
Not Reported in F.Supp.2d, 2005 WL 3967998 (C.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.